Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Attorneys for Defendants CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, RYAN SMITH, CODY MADISON, and CARLOS MITRE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX VILLANUEVA VASQUEZ, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE CITY OF SANTA PAULA, et al.,<br><br>　　　　Defendants. | No. CV 09-02590 DSF (MANx)<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 9 [TO EXCLUDE ULTIMATE ISSUE TESTIMONY]**<br><br>Date:  May 3, 2010<br>Time:  3:00 p.m.<br>Ctrm:  840 Roybal |

TO PLAINTIFF, MAX VASQUEZ, AND TO HIS ATTORNEY OF RECORD, LAW OFFICES OF BRIAN A. VOGEL BY BRIAN VOGEL:

PLEASE TAKE NOTICE that at the pretrial conference on May 3, 2010, defendants will move the Honorable Dale S. Fischer, United States District Judge, for an order in limine excluding evidence of all ultimate issue characterization by experts and lay witnesses.

In accordance with Judge Fischer's Standing Order re Jury Trial, II.A, and Central District Local Rule 7-3, the parties, through counsel, Brian Vogel and Jeffrey Held, conducted their prefiling conference relating to this and all of defendants' motions in limine on March 23, 2010.  This meeting, held telephonically, was

1

informed by defendants having electronically transmitted the exact text of the first 17 motions in limine to plaintiff's counsel on March 16, 2010.  Plaintiff's counsel stated that he was not yet in a position to concede any of these, although he acknowledged their receipt on March 16, 2010.

By this motion, defendants seek to prevent any witness from telling the jury what conclusion to reach by using the terminology which the jury will ultimately be called upon to adjudicate, such as whether the officers' conduct was reasonable or unreasonable, constituted excessive force, violated the Fourth Amendment or the Constitution, or was or was not misconduct.

Whether a witness is lay or expert is less important than whether the witness is couching testimony in terms of the ultimate legal conclusions which face the jury. *Nationwide Transport v. Cass*, 523 F.3d 1051, 1059-1060 (9th Cir. 2008).  The Ninth Circuit held that it was proper for the district court to exclude testimony offered in the terminology of the ultimate legal issues which would face the jury during deliberation — in that case, that the defendant violated the Uniform Commercial Code.

The *Nationwide Transport* court stated, "In general, testimony that simply tells the jury how to decide is not considered helpful . . . ."  Although a district court would not abuse its discretion in allowing opinion testimony when a witness could not explain through factual testimony a complex combination of circumstances leading him to reach a certain conclusion, this is true in more arcane, esoteric, and factually complicated contexts.  But in general, simply allowing witnesses to advocate for a party is more like ventriloquism than expertise or factually unique knowledge.  The ultimate echo effect may subconsciously predispose the trier of fact to believe something simply because they have heard it over and over during trial.

Lay opinion testimony cannot tell the jury which conclusion to draw. *Hester v. BIC Corp.*, 225 F.3d 178, 182 (2d Cir. 2000).  Lay opinion relating to an employer's motivation for an adverse employment decision was there held barred as naked speculation.

Rule 701(b) is designed to provide assurances against the admission of opinions which would merely tell the jury which result to reach. *Hester* at 181. Attempts to introduce biased conclusions which are little more than choosing up sides are excluded for lack of helpfulness, which is called for by Rule 701(b).

As opinions approach the crucial issues in the case, the district judge's sensitivity to usurping the province of the jury greatly increases. The value of such testimony diminishes considerably as it approaches the jury's task. The risk is that testimony phrased in terms of the ultimate opinion to be decided by the jury distracts jurors from their task of drawing an independent conclusion concerning an ultimate issue in the case. *Hester* at 182.

Testimony expressing legal conclusions — for example, that a defendant committed fraud — is a typical example of telling the jury which result to reach. Such testimony is not helpful, because witnesses are in no better a position than jurors to draw the ultimate legal conclusion from the evidence presented at trial. Further, testimony in conclusions often conveys unexpressed and implicit erroneous legal standards to the jury. *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Gonzalez v. El Dia*, 304 F.3d 63, 68, n.3 (1st Cir. 2002). The federal appellate courts have been highly critical when an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion. *Berry v. City of Detroit*, 25 F.3d 1342, 1353-1354 (6th Cir. 1994); *Hygh v. Jacobs*, 961 F.2d 359, 363-365 (2d Cir. 1992); *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), overruled on another point in *Acri v. Varian Associates*, 114 F.3d 999 (9th Cir. 1997), holding that there is no sua sponte obligation of the Ninth Circuit to review a district court's exercise of supplemental jurisdiction.

In *Berry*, the court explained at 1353:

> This latter testimony [by a police practices expert] was particularly suspect. It was carefully couched in the precise language used in case law, either indicating a keen awareness

by Postill of the direction in which he had to head, or else careful coaching prior to his testimony. "Gross negligence" is not enough to ground liability according to the Supreme Court, so Postill testified that gross negligence equates to "deliberate indifference." We apparently now have an etymology expert testifying.

We also believe this testimony was received in violation of the Federal Rules of Evidence. Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact [citation], the issue embraced must be a factual one. . . . He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens.

It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so. When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue. We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.

25 F.3d at 1353.

Opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury which result to reach, somewhat in the manner of the oath-helpers of an earlier day. The question "Did T have capacity to make a will?" would be excluded, while the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowable.

Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony remains objectionable if it communicates an explicit or even an implicit legal standard to the trier of fact. Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury. *Hygh*, 961 F.2d at 363-364.

In *Reynolds*, the Ninth Circuit dealt with a situation where the plaintiffs wanted their police tactics expert to testify that the officer used reckless tactics to restrain the decedent. If allowable, such testimony would have created a genuine issue of material fact regarding the reasonableness of the officer's use of deadly force. But the Ninth Circuit held that the proffered testimony was to be disregarded. The fact that a police practices expert disagrees with an officer's actions does not render the officer's actions unreasonable. The Ninth Circuit stated that the inquiry is not whether another reasonable or more reasonable interpretation of events can be constructed after the fact. 84 F.3d at 1170.

While there are no state-law causes of action in the complaint, this abhorrence of experts simply using the ultimate language from the jury instructions and the verdict form to tell the jury what conclusion to draw is shared by the state appellate courts. In *Benavidez v. San Jose Police Department*, 71 Cal.App.4th 853, 865 (1999), the court stated:

> Courts must be cautious where an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion. [Citation]
>
> . . . .
>
> . . . To the extent Saunders's declaration draws legal conclusions such as whether a special relationship was created when the officers replied to the 911 call, whether the officers increased the risk to plaintiffs, and whether the officers used plaintiffs as bait, we reject the declaration.

To the same effect is *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 348 (1996).

It is therefore respectfully requested that the Court enter an in limine order excluding any reference, lay or expert testimony, or argument phrased in terms of ultimate legal issues in the case, including but not limited to whether the conduct was excessive, unreasonable, reckless, improper, inappropriate, violative of the Constitution or the civil rights statutes, irresponsible, or created the need to use the force ultimately deployed.

Dated: April \_\_\_\_, 2010

LAW OFFICES OF ALAN E. WISOTSKY

By:_____
JEFFREY HELD
Attorneys for Defendants, CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, CARLOS MITRE, CODY MADISON, and RYAN SMITH