Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Attorneys for Defendants CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, RYAN SMITH, CODY MADISON, and CARLOS MITRE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX VILLANUEVA VASQUEZ, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>THE CITY OF SANTA PAULA, et al.,<br><br>        Defendants. | No. CV 09-02590 DSF (MANx)<br><br>**DEFENDANTS' MOTION IN LIMINE NO. 14 [TO EXCLUDE ATTRIBUTION OF FAULT TO METHOD OF TAKING PHOTOGRAPHS OF PLAINTIFF'S INJURIES]**<br><br>Date: May 3, 2010<br>Time: 3:00 p.m.<br>Ctrm: 840 Roybal |

TO PLAINTIFF, MAX VASQUEZ, AND TO HIS ATTORNEY OF RECORD, LAW OFFICES OF BRIAN A. VOGEL BY BRIAN VOGEL:

PLEASE TAKE NOTICE that at the pretrial conference on May 3, 2010, defendants will move the Honorable Dale S. Fischer, United States District Judge, for an order in limine excluding attribution of fault to the method of taking photographs of plaintiff's injuries.

In accordance with Judge Fischer's Standing Order re Jury Trial, II.A, and Central District Local Rule 7-3, the parties, through counsel, Brian Vogel and Jeffrey Held, conducted their prefiling conference relating to this and all of defendants' motions in limine on March 23, 2010.  This meeting, held telephonically, was

1

informed by defendants having electronically transmitted the exact text of the first 17 motions in limine to plaintiff's counsel on March 16, 2010. Plaintiff's counsel stated that he was not yet in a position to concede any of these, although he acknowledged their receipt on March 16, 2010.

During the depositions of the officers, plaintiff's counsel devoted substantial effort to critiquing the photographing of the plaintiff's injuries. These inquiries ran the gamut from whether the photographic perspective was poorly selected, whether the photographs should have been taken at the scene as opposed to in the hospital emergency room, and whether the nature of photographing the injuries without using some kind of ruler or other object for size perspective violated the department's general order regarding use of Tasers. The suggestion implicit in this examination was that the method of photography was somehow a constitutional violation. Defendants of course do not seek the exclusion of the photos or any questions about what they depict, but any suggestion that the method of photography constitutes in and of itself a constitutional violation is a pure red herring.

The officers, Officer Mitre in particular, did take photographs of the plaintiff's injuries, but not at the scene of the contact. Rather, the photographs were taken minutes later at the hospital emergency room. It is believed that plaintiff wishes to argue that the photographs lack perspective, that there should have been more photographs, more detailed photographs, or a wider-angled perspective.

Taking bad photographs is not a constitutional violation. Not every law enforcement action which someone might consider improper or unkind is a constitutional violation. In *Conn v. Gabbert*, 526 U.S. 286 (1999), the attorney for a grand jury witness in a criminal trial brought a §1983 civil rights action against county prosecutors. He claimed that his Fourteenth Amendment right to practice his profession was violated when prosecutors executed a search warrant at the very same time he had to be in court while his client was testifying. The Supreme Court disagreed. The attorney's Fourteenth Amendment right was not violated by the timing

of the search, nor did his client have a right to have his attorney present during a grand jury proceeding.

The Fourth Amendment's reasonableness standard is not the same as the standard of reasonable care under tort law. *Billington v. Smith*, 292 F.3d 1177, 1190 (9th Cir. 2002). An officer may fail to exercise reasonable care as a matter of tort law yet still be a constitutionally reasonable officer. *Id*. Thus, even if an officer negligently provokes a violent response, that negligent act will not transform an otherwise reasonable subsequent use of force into a Fourth Amendment violation. *Id*.

Perhaps it is negligent not to take better photographs or to use a ruler in the photographs to indicate scale. But negligence, such as in the taking of photographs, is not a constitutional tort. We know from *Conn* that not every form of action which injures a citizen's interests is a constitutional tort — not every form of police conduct implicates a constitutional right.

The examination of the officers at their deposition suggested that plaintiff's counsel would seek to attribute fault or misconduct to the timing of taking the photographs — that they were taken at the hospital emergency room as opposed to minutes earlier at the scene of the confrontation. But the priority there was medical care for an injured person, as well as officer safety, not immediate evidence preservation. The suggestion was made that once the plaintiff was handcuffed and then seated in the rear of the police vehicle, he ceased to be a threat and the photographs could have been successfully snapped in the back of the patrol car. While common sense would indicate that a handcuffed individual seated in the back of the police car is no threat, experience teaches that common sense is wrong. Counterintuitively, even handcuffed suspects in the rear of police cars can, in their anger and agility, or desperation, free themselves, obtain access to the officer's weapon, and take many innocent lives. The situation is not over or wholly defused merely because the person is now handcuffed and seated. For example, in the case of *Elliott v. Leavitt*, 105 F.3d 174 (4th Cir. 1997), Chief Judge Wilkinson concurring in

1 denial of rehearing en banc, it was stated:

> Faced with the potential danger of an aggressive, intoxicated suspect, officer Leavitt handcuffed Elliott and placed him in the police car. Shortly thereafter, he and officer Cheney saw Elliott pointing a gun at them at close range with his finger on the trigger. Extensive independent evidence corroborated the officers' account of events.

105 F.3d at 175.

It is therefore of the highest magnitude that the suspect be restrained until the last necessary moment, which is the time for the hospital emergency room physician to examine and treat the plaintiff. At that point, medical treatment becomes the priority. Both officers are present to restrain the plaintiff in the event that he attempts to attack anyone or disarm the officers. The officers are also standing, facing the recently arrested individual — in a police car, he is seated behind them.

In the hospital emergency room, everything will be visible. The plaintiff cannot be asked to disrobe or partially disrobe at the scene, because there are bystanders and onlookers. But in the calm privacy of a hospital examination room, the suspect can be asked to partially disrobe. Then more of his injuries will be visible and can be photographed. There will be better lighting, as well. Therefore, the slight delay in taking the photographs merely enhanced the ability of the police to preserve evidence.

Another problem with the bad photography theory is that events outside the explicit time frame in question are irrelevant. What the officers might have done minutes or days before the seizure or minutes or days after the seizure is irrelevant (perhaps with the narrow exception of not summoning medical care rapidly enough). This is often referred to as the explicit time frame requirement of a §1983 case. This requirement stems from the Supreme Court's use of the phrase "at the moment" in the statement that "with respect to a claim of excessive force, the standard of reasonableness at the moment applies . . . ." *Graham v. Connor*, 490 U.S. 386, 396

(1989). The high Court's use of the phrases "at the moment," "split-second judgment," and "officer on the scene" is strong indicia that the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officer effectuates the search or seizure. *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995).

In *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991), a claim was made that the officer committed negligence leading to the improper seizure by not getting a flashlight prior to making a nighttime arrest so that she could not see that the object held in the suspect's hands was not a weapon. But the evidence was rejected — the officer's liability is to be determined exclusively upon an examination of the information which the officer possessed immediately prior to and at the very moment of using the force. The *Schulz* court therefore concluded that "Accordingly, evidence that Officers Vanalmsick and Long created the need to use force by their actions prior to the moment of seizure is irrelevant to the issues presented here, and therefore the district court did not abuse its discretion in excluding it." 44 F.3d at 649.

Officer conduct outside the time of application of force is irrelevant unless the provocation itself is an independent constitutional violation undertaken intentionally or recklessly. *Billington*, 292 F.3d at 1189; *Thomson v. Salt Lake County*, 584 F.3d 1304, 1320 (10th Cir. 2009).

So what the officers did with regard to allegedly negligent evidence preservation in the aftermath of the seizure is excluded as irrelevant and immaterial, being outside the time scope of the confrontation. Further, it should be pointed out that there is no cause of action or allegation for non-preservation of evidence. Non-preservation of evidence would at most be negligent and, therefore, under *Billington*, not constitutionally violative.

///

It was suggested by plaintiff's counsel during deposition examination of the officers that non-compliance with the department's order about photographing injured Taser suspects somehow resuscitated a nonexistent constitutional violation. But the

5

1    case law from the Supreme Court on down is clear that violation of municipal police
2    policies does not constitute a violation of the Constitution.  If it did, police
3    departments would be free to simply adopt the least restrictive requirements
4    imaginable, and then none of their officers would be liable.  Additionally, allowing
5    local police department policies to inform the content of the Constitution would be to
6    balkanize the Fourth Amendment, fracturing its meaning in each separate jurisdiction.
7    Cases standing for this proposition include *Whren v. United States*, 517 U.S. 806, 815
8    (1996) ["Moreover, police enforcement practices, even if they could be practicably
9    assessed by a judge, vary from place to place and from time to time.  We cannot
10   accept that the search and seizure protections of the Fourth Amendment are so
11   variable . . ."]; *Swanson v. United States Forest Service*, 87 F.3d 339, 345 (9th Cir.
12   1996); *James v. U.S. Parole Commission*, 159 F.3d 1200, 1206 (9th Cir. 1998); *Smith
13   v. Freland*, 954 F.2d 343, 347-348 (6th Cir. 1992) ["Furthermore, the fact that Officer
14   Schulcz's actions may have violated Springdale's policies regarding police use of
15   force does not require a different result.  Under §1983, the issue is whether Officer
16   Schulcz violated the Constitution, not whether he should be disciplined by the local
17   police force."].

18        There is no appellate decision or statute requiring photographs to be taken at a
19   certain time or in a certain way.  The fact that the officers arguably violated municipal
20   policies by not using a ruler in the photographs or otherwise is not part of the Fourth
21   Amendment and therefore foreign to a §1983 action.

22        It is therefore respectfully requested that the Court exclude reference, argument,
23   and examination suggesting that the method of photography was a constitutional
24   violation or misconduct of some sort. Examples of examination and argument sought
25   to be excluded are that the photographs were not taken correctly, that there was
26   insufficient perspective, that there were insufficient photographs taken, that there was
27   no ruler or other object to indicate the size of the injuries, that the focus of the lens
28   aperture was insufficiently accurate to record the nature of the injuries, and that the

6

1  department's policies required use of a measuring device in the photographs.

3        Dated: April ____, 2010

4                                        LAW OFFICES OF ALAN E. WISOTSKY

6                                        By:_____
                                            JEFFREY HELD
7                                           Attorneys for Defendants, CITY OF
                                            SANTA PAULA, SANTA PAULA
8                                           POLICE DEPARTMENT, STEVE
                                            MacKINNON, CARLOS MITRE,
9                                           CODY MADISON, and RYAN SMITH