Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California 93036
Tel:  (805) 278-0920
Fax:  (805) 278-0289
E-mail: lawyers@wisotskylaw.com

Attorneys for Defendants CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, RYAN SMITH, CODY MADISON, and CARLOS MITRE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAX VILLANUEVA VASQUEZ, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CITY OF SANTA PAULA, et al.,<br><br>    Defendants. | No. CV 09-02590 DSF (MANx)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 1**<br><br>Date: May 3, 2010<br>Time: 3:00 p.m.<br>Ctrm: 840, Roybal Bldg. |

Defendants hereby respond to plaintiff's Motion in Limine No. 1 as follows:

Initially, defendants note that the date given in the motion for the incident forming the basis of this lawsuit is incorrect; the confrontation occurred the previous day, on April 15, 2007. As particularized on page three, defendants agree that the content of points one, two and four should be excluded from evidence. These points have marginal probative value and would be highly prejudicial to the plaintiff. Therefore, defendants agree not to reference the plaintiff's marijuana use, leaving his young daughter alone in a separate building while he played music and smoked marijuana, and his violation of the domestic violence restraining order.

/ / /

1   Defendants disagree, however, with the exclusion of the content of point
2 number three on page three.  Events occurring immediately preceding the police
3 contact form part of the *res gestae*.  The mind-altering anger of the plaintiff just
4 preceding his contact with the officers is going to be critical for the jury to understand
5 the truth or falsity of what the officers and plaintiff's then girlfriend, April Clanton,
6 are contending happened versus what the plaintiff says happened.

7   The story of that day cannot begin when the police arrived at the scene in
8 response to April Clanton's call for assistance with a domestic violence incident.  The
9 real story of that day beginss a few hours earlier when, according to April Clanton, the
10 plaintiff, her then live-in boyfriend, came to her place of employment, the Mupu Bar
11 and Grill in Santa Paula.  She was a food server there.

12   Plaintiff  was furious with her because he wrongly suspected her of infidelity
13 with a male food server at the Mupu Bar and Grill.  He there behaved abominably,
14 according to Ms. Clanton, making a public scene at her place of employment while
15 he wildly accused her of sexual infidelity.  During his public tirade against her, he
16 made physical threats against co-workers there.

17   He then went to their home.  April Clanton received permission from her
18 manager to go home and settle her personal situation with the plaintiff.

19   Upon returning home, Ms. Clanton found the side door to their garage open.
20 She was quite surprised to see the windshield of the plaintiff's car completely
21 shattered.  She asked his friend who happened to be there, Guadalupe Guadian, what
22 had happened.  He said, and the plaintiff later confirmed to her, that he shattered the
23 windshield in his anger at her infidelity.  This was his frame of mind when he angrily
24 slammed  the gate fence on April Clanton's arm, damaging her elbow.

25   Some of the major facts informing the responding officers' thinking and
26 decisions when they arrived at plaintiff's mother's home, where the incident actually
27 took place, was that there was blood on the plaintiff's arms and that April Clanton was
28 guarding and holding her elbow as though she had been injured.  The plaintiff

1 adamantly denied that there was blood on his arms.  Sr. Officer Cody Madison
2 documented the presence of blood in his report and mentions it on the tape recording
3 of the incident.  April Clanton was standing some distance away from the events
4 occurring near the front door and garage of her boyfriend's mother's home and cannot
5 say whether there was or was not blood on plaintiff's arms at the time that he dealt
6 with police.  She can definitively say, and said in her deposition, that she observed
7 lacerations on his arms a short while before he contacted the police at his mother's
8 home. (Lacerations no doubt stemming from his shattering his vehicle's windshield
9 in his fury at her.)

10      His state of mind at the Mupu Bar and Grill a few hours before the contact with
11 the police tends to make it substantially more probable that he shattered the
12 windshield of his vehicle and in so doing had cuts and bleeding on his arms.  If that
13 is to be believed, it suddenly becomes much more believable that there were
14 lacerations on his arms which contained blood.  The presence of  lacerated and
15 bleeding arms makes the officers' belief that they were dealing with a violent
16 individual who might strike out at them much more credible and therefore makes their
17 use of force against him exponentially more reasonable.

18      The plaintiff's first in limine motion, point number three, seeks to strip the
19 contact of context.  But it is only in the context of the plaintiff's infuriated state of
20 mind that the entire set of events can be clearly understood.
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

1   It is therefore respectfully requested that the court grant the plaintiff's motion
2   in limine as to points one, two and four but deny it as to point three.

4   Dated:  April ____, 2010

5                                       LAW OFFICES OF ALAN E. WISOTSKY

7                                       By:_____
                                        JEFFREY HELD
8                                       Attorneys for Defendants, CITY OF
                                        SANTA PAULA, SANTA PAULA
9                                       POLICE DEPARTMENT, STEVE
                                        MacKINNON, CARLOS MITRE,
10                                      CODY MADISON, and RYAN SMITH

4