1   Alan E. Wisotsky (SBN 68051)
    Jeffrey Held (SBN 106991)
2   LAW OFFICES OF ALAN E. WISOTSKY
    300 Esplanade Drive, Suite 1500
3   Oxnard, California 93036
    Tel:   (805) 278-0920
4   Fax:   (805) 278-0289
    E-mail: lawyers@wisotskylaw.com
5
    Attorneys for Defendants CITY OF SANTA
6   PAULA, SANTA PAULA POLICE
    DEPARTMENT, STEVE MacKINNON, RYAN
7   SMITH, CODY MADISON, and CARLOS MITRE

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MAX VILLANUEVA VASQUEZ, an )        No. CV 09-02590 DSF (MANx)
    individual,                    )
12                                 )    **PARTIES' PROPOSED**
                  Plaintiff,       )    **SPECIAL JURY**
13                                 )    **INSTRUCTIONS AND**
           v.                      )    **OBJECTIONS THERETO**
14                                 )
    THE CITY OF SANTA PAULA,       )    Date: May 3, 2010
15  et al.,                        )    Time: 3:00 p.m.
                                   )    Ctrm: 840 Roybal
16                Defendants.      )
                                   )
17  ─────────────────────────────

18        Per the Court's standing order, the following are the parties' special jury

19  instructions with the opposing party's objection immediately following each

20  instruction.

21  Dated: April ____, 2010  LAW OFFICES OF BRIAN A. VOGEL

22

23                           By_____
                               BRIAN A. VOGEL
24                             Attorney for Plaintiff

25  Dated: April ____, 2010 LAW OFFICES OF ALAN E. WISOTSKY

26

27                           By_____
                               JEFFREY HELD
28                             Attorney for Defendants

                                1

**PLAINTIFF'S SPECIAL JURY INSTRUCTION NO. 1**


**9.22 PARTICULAR RIGHTS—FOURTH**

**AMENDMENT—UNREASONABLE SEIZURE**

**OF PERSON—GENERALLY**


In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest and or in defending himself or others.  Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officers used excessive force during their contact with him on April 15, 2007.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the officers used excessive force in this case, consider all of the circumstances known to the officers on the scene, including:

1.    The severity of the crime or other circumstances to which the officers were responding;

2.    Whether the plaintiff posed an immediate threat to the safety of the officers or to others;

3.    Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;

4.    The amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary;

5.    The type and amount of force used;

6.    The availability of alternative methods to take the plaintiff into custody.

2

## PLAINTIFF'S SPECIAL JURY INSTRUCTION NO. 2

## (PROPOSED ADDITIONAL 9.22 FACTOR)

7.     Whether a warning was given, if feasible.

1  **DEFENDANTS' RESPONSE TO PLAINTIFF'S**
2  **PROPOSED FIRST AND SECOND SPECIAL JURY**
3  **INSTRUCTIONS**

4        Plaintiff's first and second proposed special jury instructions involve a
5  requested modification of 9.22 from the Manual of Model Ninth Circuit Jury
6  Instructions.  The two principal deviations proposed by plaintiff are to insert the
7  availability of alternative methods of taking the plaintiff into custody in the sixth
8  element and to introduce the concept of a warning in a seventh element.  Defendants'
9  response is to strongly oppose the charging of the jury with the proffered sixth
10 element, as it directly contravenes a large body of Ninth Circuit holdings, to assent to
11 the charging of the jury with the seventh element (renumbering it as number six) and
12 to fault the proposed instruction for not including several elements addressed in the
13 defendants' proposed special instructions.

14       Turning initially to the proffered sixth element in plaintiff's proposed deviation
15 from 9.22 as it appears in the manual, the availability of alternative methods to take
16 the plaintiff into custody has been rejected by several Ninth Circuit decisions and,
17 indeed, plaintiff offers no appellate authority supporting his instruction.

18       In *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010), a case uniquely
19 applicable to the present facts, which likewise involve police response to a domestic
20 violence call in which an electronic control device was used, the Ninth Circuit
21 explained:

22           Although there may have been alternative methods of
23           forcefully moving Jayzel out of the way, officers are not
24           required to use the least amount of force necessary.
25 *Mattos*, 590 F.3d at 1088-1089.

26       In *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), the Ninth Circuit stated:
27           Plaintiff argues that the officers should have used
28           alternative measures before approaching and knocking on

4

> the door where Scott was located.  But, as the text of the
> Fourth Amendment indicates, the appropriate inquiry is
> whether the officers acted reasonably, not whether they
> have less intrusive alternatives available to them. . . .
> Requiring officers to find and choose the least intrusive
> alternative requires them to exercise superhuman judgment.
> In the heat of battle with lives potentially in the balance, an
> officer would not be able to rely on training and common
> sense to decide what would best accomplish his mission.
> Instead, he would need to ascertain the least intrusive
> alternative (an inherently subjective determination) and
> choose that option and that option only.  Imposing such a
> requirement would inevitably induce tentativeness by
> officers, and thus deter police from protecting the public
> and themselves.  It would also entangle the courts in
> endless second-guessing of police decisions made under
> stress and subject to the exigencies of the moment.

*Scott,* 39 F.3d at 915.

In *Forrester v. City of San Diego*, 25 F.3d 804, 807-808 (9th Cir. 1994), the Ninth Circuit stated:

> Despite these governmental interests, the demonstrators
> argue that dragging and carrying was a more reasonable
> means of accomplishing the City's goals and therefore
> contend that any other method was excessive.  Police
> officers, however, are not required to use the least intrusive
> degree of force possible.  Rather, as stated above, the
> inquiry is whether the force that was used to effect a
> particular seizure was reasonable, viewing the facts from

1        the perspective of a reasonable officer on the scene
2        . . . .Whether officers hypothetically could have used less
3        painful, less injurious, or more effective force in executing
4        an arrest is simply not the issue.

5   *Forrester,* 25 F.3d at 807-808.

6        In *Billington v. Smith*, 292 F.3d 1177, 1188 (9th Cir. 2002), the Ninth Circuit
7   stated:

8        In *Scott v. Henrich*, we held that even though the officers
9        might have had less intrusive alternatives available to them
10       and perhaps under departmental guidelines should have
11       developed a tactical plan instead of attempting an
12       immediate seizure, police officers need not avail them-
13       selves of the least intrusive means of responding and need
14       only act within that range of conduct we identify as
15       reasonable.

16  *Billington*, 292 F.3d at 1188.

17       In *Brooks v. City of Seattle*, _____F.3d _____, 2010 WL 1135776 (9th Cir.,
18  3/26/10) [no official cite or pagination yet available], the Ninth Circuit stated:

19       We agree with the *Forrester* panel here:  the District
20       Court's general and vague statement that there were
21       numerous other means of removing Brooks reflects after-
22       the-fact speculation and fails to address what else these
23       officers could have done in the situation that confronted
24       them at that moment, when they needed to get the resistant
25       Brooks out of the car to arrest her.

26  *Brooks*, 2010 WL 1135776 at p. 9.

27  / / /

28  / / /

6

1    Therefore, the sixth element requested by the plaintiff's first proffered special
2    jury instruction is against the law.  Defendants respectfully request that it not be given.
3    As stated earlier, defendants do not oppose the giving of the seventh factor
4    about feasible warnings, but it would have to be renumbered as factor number six.
5    The proffered instruction is also deficient in not containing the language about
6    split-second decisions.  In numerous and recent Ninth Circuit decisions, including
7    *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), it has been repeatedly emphasized
8    that "police officers are often forced to make split-second judgments — in
9    circumstances that are tense, uncertain and rapidly evolving — about the amount of
10   force that is necessary in a particular situation."  *Mattos*, 590 F.3d at 1088.

11   Other cases emphasizing the importance of this language include *Billington v.*
12   *Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002), *Jackson v. City of Bremerton*, 268 F.3d
13   646, 651 (9th Cir. 2001), and *Cox v. Treadway*, 75 F.3d 230, 236 (6th Cir. 1996).
14   Defendants have requested that the jury be charged with this crucial language in
15   defendants' proposed Special Jury Instruction No. 6.  Plaintiff's proposed modifi-
16   cation of 9.22 does not contain such language — if it were to be incorporated into a
17   modified 9.22, it would belong at the end of the second paragraph or in a newly
18   created third paragraph.

19   Another deficiency of plaintiff's proffered Special Instruction No. 1 is that there
20   is no definition of the vague and somewhat misleading phrase "actively resisting
21   arrest," which appears in element three.  In the quite recent circuit decision of
22   *Brooks v. City of Seattle*, the Ninth Circuit dealt with some less-than-active resistance
23   in the domestic violence context where electronic control devices are utilized by
24   police to bring resisting subjects under control.  The decision in *Brooks* brings lucid
25   clarification to the concept of resistance by showing that persons who are not
26   physically attacking the police or someone else can be resisting.  Quotations from the
27   / / /
28   *Brooks* decision explain this concept of propriety of police force for less-than-active

7

resistance:

> [A]n arrestee's resistance may support the use of force regardless of whether probable cause existed.  See *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (finding an arrestee's actions in stiffening her arm and attempting to pull it away to be resistance justifying the officer's use of force in handcuffing regardless of whether there was probable cause to arrest her).

*Brooks v. City of Seattle*, _____ F.3d _____, star page 2, actual page 6 of Westlaw cite.

> [Plaintiff] grasped the steering wheel and wedged herself between the seat and steering wheel, and she refused to get out of the car when asked. . . . Our precedent also classifies Brooks's conduct as active resistance.  See *Chew*, 27 F.3d at 1442 (hiding and fleeing is resisting arrest and offering physical resistance to an officer's efforts constitutes a greater level of active resistance).  While Brooks's resistance may not have been violent or aggressive, those aspects are more relevant to the second *Graham* factor, leaving the fact of her resistance here to weigh against finding the force used excessive.

*Brooks v. City of Seattle*, _____ F.3d _____, star page 9, actual page 11.

Defendants' proposed Special Instruction No. 10 covers this concept.  Plaintiff's proffered instructions have no analogue.  Plaintiff's proffered Instruction No. 1 would leave the trier of fact blind as to what the important phrase "actively resisting arrest" meant.  Therefore, plaintiff's proffered Instructions 1 and 2 are deficient, and defendants therefore respectfully request that the Court not charge the jury thusly.

**PLAINTIFF'S SPECIAL JURY INSTRUCTION NO.  3**

**USE OF FORCE AFTER POLICE HAVE CONTROL**

Where police have control over a suspect, the use of further force to bring the subject under control may be unreasonable.

*Source Authority*:

*Brooks v. City of Seattle* --- F.3d --- , 4922, 2010 WL 1135776 (9th Cir., 03/26/10); *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000)

## DEFENDANTS' RESPONSE TO PROFFERED SPECIAL INSTRUCTION NO. 3

Plaintiff's proffered Instruction No. 3 is a correct statement of the law and would be important for the jury to know in addressing the present facts.  Defendants would therefore agree that the jury could be so instructed but only if the jury also received defendants' special instructions which informed the jury of important aspects of the law of police use of force not contained in existing Manual of Model Ninth Circuit Instructions, such as 9.22.  By charging the jury with instructions such as plaintiff's Special Instruction No. 3 and defendants' Instructions 2 through 10, the jury would have a full picture of important aspects of the law of police use of force and especially in the contours of the present situation, including response to a domestic violence investigation (defendants' Instruction No. 7).

**PLAINTIFF'S SPECIAL JURY INSTRUCTION NO.  4**


**USE OF A TASER**


The use of a TASER is a serious intrusion into the core of the interests protected by the Fourth Amendment: the right to be secure in our persons.

*Source Authority*:

*Mattos v. Agarano*, 590 F.3d 1082, 1087 (9th Cir. 2010)

**DEFENDANTS' RESPONSE TO PROFFERED INSTRUCTION NO. 4 BY PLAINTIFF**

Defendants' response to this proffered instruction is the same as it was to plaintiff's proffered Instruction No. 3 — it is a true statement and an important aspect of the law of search and seizure, especially where police force is challenged, yet it would be vastly prejudicial to the defendants to charge the jury with this instruction, plaintiff's proffered No. 4, without giving the jury the entire picture of all aspects involving police use of force. These are contained in defendants' Special Instructions 2 through 10. Therefore, if the Court will issue defendants' Instructions 2 through 10, defendants have no opposition to plaintiff receiving his proposed Instruction No. 4.

## PLAINTIFF'S SPECIAL JURY INSTRUCTION NO.  5

## USE OF A TASER

The use of a TASER constitutes an intermediate, significant level of force that must be justified by a strong governmental interest that compels the use of such force.

*Source Authority*:

*Bryan v. McPherson,* 590 F.3d 767, 774 (9th Cir. 2009)

13

## DEFENDANTS' OPPOSITION TO INSTRUCTION NO. 5

Plaintiff's submission of this proposed fifth jury instruction is archaic, as it is based upon a now-superseded Ninth Circuit decision. The authority relied upon by plaintiff was held to be based upon inadequate data and therefore superseded by a more recent Ninth Circuit decision which was fully informed about the use of Tasers and their effects. Defendants now take this opportunity to quote from the more recent and much better informed Ninth Circuit decision, *Brooks v. City of Seattle*, _____F.3d _____, 2010 WL 1135776 (9th Cir. 3/26/10):

> The *Bryan* panel undertook a more detailed analysis of the quantum of force. The panel concluded that the use of a Taser, in a manner equivalent to dart mode, "constitutes an intermediate, significant level of force that must be justified by a strong government interest that compels the employment of such force." *Bryan*, 590 F.3d at 774. . . .
>
>        . . . .
>
> The force at issue here is markedly different than the force in *Bryan,* and, unlike in *Mattos*, we have the benefit of a fully-developed record on the use of a Taser in drive-stun mode. The use of the Taser in drive-stun mode is painful, certainly, but also temporary and localized, without incapacitating muscle contractions or significant lasting injury. Brooks said she sustained burn marks and now has scars on her upper arm and thigh, which is certainly not insignificant, but these injuries are far less serious than those inflicted on Bryan by the X26 Taser — excruciating pain throughout his entire body, temporary paralysis, facial

14

abrasions, shattered teeth, and sharp barb lodged into his flesh.  Thus, the use of the Taser in drive-stun mode — as opposed to dart mode — seems unlike the force used in *Bryan* or uses of force which this court  has previously considered severe. . . . Indeed, the amount of force here was more on par with pain compliance techniques, which this court has found involve a less significant intrusion upon an individual's personal security than most claims of force, even when they cause pain and injury. . . . Although certainly a serious intrusion, . . . when compared to the far more serious intrusion in *Bryan*, we find the quantum of force here to be less than the intermediate.

*Brooks v. City of Seattle*, _____ F.3d _____ at star page 7 and actual page 10.

The description of the amount of force and degree of injury caused by a Taser contained in the *Brooks* decision demonstrates that the courts are still grappling with the nature of the Taser, the quantum of force which it inflicts, and also the degree of injury which it causes.  *Brooks*' honest and forthright discussion quoted above demonstrates that the record in the case before it about the quantum of force and degree of injury occasioned by a Taser was vastly more developed than in the *Bryan* decision.

Based upon the evidence of the minimal amount of force which a Taser used and the minimal amount of damage it caused in the *Brooks* decision, the *Brooks* court was constrained to part company with the *Bryan* case.  This dichotomy clearly indicates that the evidence presented by the parties to the district court is what is going to inform the federal court's understanding of this crucial element of the quantum of force and degree of injury occasioned by this electronic control device.

/ / /

With all due respect to the *Brooks* court, its effort to reconcile its review of its

15

own record, fully developed, with that of the *Bryan* case, improperly seeks to draw a distinction between the use of the Taser in the contact, or drive-stun, mode with the use of the Taser in the dart mode method of application. If defendants are permitted to do so, they will provide enormous evidence during the trial of this case that what the *Brooks* court wrote about the use of the Taser in drive-stun mode is likewise applicable to the use of the Taser in dart mode — the method of application does not make the observations of the *Brooks* court analogizing the electronic control device to a pain compliance technique differ based upon application by contact or shooting. The quantum of force and degree of injury is actually the same irrespective of application by contact or dart method.

The expert witness for the defense in this case, Greg Meyer, and his testimony to the jury will clearly show that the Taser is a fairly benign tool in the police arsenal which causes momentary injury only. In the vast majority of cases, it is innocuous and benign, only momentarily stunning the victim into immobility so that the police can handcuff him or her without causing any more significant or lasting injuries.

The facts in this case bear that out. The plaintiff is not claiming any nervous or neurological injuries. He was not so disabled even by the first application of the Taser that he was immobilized. In fact, after an eight-second interval of assessment, the officer had to apply a second five-second cycle of electricity to disable the plaintiff so that the other officer could handcuff him. These facts demonstrate that the plaintiff in the current case had no injury whatsoever from the Taser application. He did have a minor cut in his eyebrow area, but that was from when the non-Tasing officer, Carlos Mitre, caused the plaintiff to fall against the garage as the plaintiff struggled against his control hold.

Defendants applaud the analysis of the *Brooks* case so far as it correctly concludes that the appellate court's analysis of the quantum of force and degree of injury occasioned by an electronic control device can only be as informed as the record is developed by the parties in the district court. When the *Brooks* court had a

1  fully developed record, it was able to conclude that the Taser was more like a pain

2  compliance technique, not involving as high a degree of force as intermediate.  The

3  defendants will adduce evidence in this case to conclusively demonstrate that the

4  application of the Taser by dart mode, as in this case, is a highly effective means of

5  momentarily disabling a person without causing any but momentary neurological

6  disturbance and that there is no lasting or permanent neurological injury or disruption

7  beyond that.   Injuries sustained are extremely minor or, in this case, actually

8  nonexistent.   Therefore, the use of the questionably developed record from the

9  *Bryan* case, as clarified by the more developed record in *Brooks*, would be unfair to

10  the defendants in this case, who will present abundant evidence of the highly effective,

11  benign, and non-injurious use of the electronic control device.

## PLAINTIFF'S SPECIAL JURY INSTRUCTION NO. 6

## IMMEDIACY OF THREAT POSED BY SUSPECT

In evaluating these factors, the most important single element is whether the suspect poses an immediate threat to the safety of officers or others.

*Source Authority*:

*Smith v. City of Hemet,* 394 F.3d 689, 702 (9th Cir. 2005)

1

2

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROFFERED INSTRUCTION NO. 6**

3

4      Defendants do not oppose the jury being charged with plaintiff's proffered

5   Special Instruction No. 6, but defendants believe that their proffered Instruction No. 4

6   is somewhat clearer upon the point. The language is confusing in plaintiff's proffered

7   Special Instruction No. 6; it states, "In evaluating these factors  .  .  . ." Plaintiff's

8   Special Instruction No. 6 does not say what "these factors" are.  In contrast, the

9   defendants' proposed Instruction No. 21 specifically links this instruction to the

10  factors described in its Instruction No. 2, which is pattern instruction 9.22. Therefore,

11  defendants feel that although No. 6 proposed by the plaintiff is a generally accurate

12  statement of the law, it is somewhat confusing, and the jury would be better served by

13  being charged with defendants' Special Instruction No. 2.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 1

## EFFECT OF RECORDED CONTACT

A police-recorded series of events involving the plaintiff, whether audio or video, is conclusive as to what was said, done, or otherwise preserved in the recording.  This instruction, however, would not be valid if there were evidence from which you could determine that the recording was doctored or altered in any way or if it appeared logical to you that what it depicted differed from what actually happened.  In the absence of such evidence, however, you are bound by the factual version of events to the extent recorded by the police recording device.

*Source Authority:*

   *Scott v. Harris*, 550 U.S. 372, 380-381 (2007)

**PLAINTIFF'S OBJECTION TO DEFENDANTS'**

**PROPOSED JURY INSTRUCTION NO. 1**

**EFFECT OF RECORDED CONTACT**

This instruction is unnecessary in light of Ninth Circuit Model Jury Instructions 1.6, 1.7, and 2.5. The language in the instruction is confusing and unsupported by the cited authority. The fact that the incident is "police recorded" does not affect the weight that should be given to the recording. Further, the recording is "conclusive" only as to the information that is contained or preserved in the recording. No special instruction is needed to convey this tautology.

*Scott v. Harris*, 550 U.S. 372, does not support the language of the instruction. In *Scott*, the Supreme Court granted summary judgment based upon qualified immunity to a police officer involved in a high speed pursuit. The Court relied upon videotape evidence from a dashboard-mounted videotape to resolve the factual question of "whether respondent was driving in such fashion as to endanger human life." *Id.* at 380. The Supreme Court found that "Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.* There is nothing in this language or in the Supreme Court's opinion which required a change as to how juries should be instructed regarding the weight to be given to audio or videotape evidence. On the contrary, the opinion made no finding in this area and the current Ninth Circuit Model Jury Instructions adequately instruct the jury on the weight to be accorded to various types of evidence, including tape recordings.

## DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 2

### 9.22  PARTICULAR RIGHTS — FOURTH AMENDMENT — UNREASONABLE SEIZURE OF PERSON — EXCESSIVE (DEADLY AND NON-DEADLY) FORCE

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself or others.  Thus, in order to prove an unreasonable seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officers used excessive force when bringing him under control on April 15, 2007.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. In other words, you must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.

In determining whether the officers used excessive force in this case, consider all of the circumstances known to the officers on the scene, including:

(1)    The severity of the crime or other circumstances to which the officers were responding;

(2)    Whether the plaintiff posed an immediate threat to the safety of the officers or to others;

(3)    Whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight;

(4)    The amount of time and any changing circumstances during which the officers had to determine the type and amount of force that appeared to be necessary; and

(5)    The type and amount of force used.

**PLAINTIFF'S OBJECTION TO DEFENDANTS'**

**PROPOSED  JURY INSTRUCTION NO. 2**


**9.22 PARTICULAR RIGHTS—FOURTH**

**AMENDMENT—UNREASONABLE**

**SEIZURE OF PERSON—GENERALLY**


The Defendants' instruction omits factor number 6 of the Ninth Circuit Model Jury Instruction 9.22.   Numerous decisions of the Ninth Circuit have held that the "availability of alternative methods of capturing or subduing a suspect may be a factor to consider" in determining the objective reasonableness of a particular use of force. In *Smith v. City of Hemet*, 394 F. 3d 689 (9th Cir. 2005), the Court addressed the question of alternative methods of subduing a suspect, and found that such evidence is highly relevant in evaluating the reasonableness of force used. "As we have previously explained, an additional factor that we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect. (*Chew v. Gates*, 27 F.3d at 1441 n.5.)  Smith argues that the officers' conduct violated applicable police standards and that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury (than use of police dog)…He concluded that the officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground.  A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable. [citations]." *Id.* at p. 249-250 (emphasis added).

The 9th Circuit recently held in *Bryan v. McPherson*,590 F.3d 767, 780 (9th Cir. 2009), that police are "required to consider[w]hat other tactics if any were available to effect the arrest," [citations]. Further, the Court recognized, "the equally settled principle that officers must consider less intrusive methods of effecting the arrest and

1  that the presence of feasible alternatives is a factor to include in our analysis." (*Id.* at

2  780, fn 15.)

1

## DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 3

2

3

## LESS INTRUSIVE ALTERNATIVES

4

## TO THE FORCE ACTUALLY USED

5

6   Although there may have been alternative methods of force, police officers are

7   not required to use the least amount of force necessary.  Although an alternative

8   method of force may have been advisable, the Fourth Amendment does not require an

9   officer to use the minimum amount of force necessary to control or arrest a person.

10  The appropriate inquiry is whether the officers acted reasonably, not whether they had

11  less intrusive alternatives available to them.

12

13  *Source Authority:*

14   *Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010);  *Scott v. Henrich*,

15  39 F.3d 912, 915 (9th Cir. 1994); *Forrester v. City of San Diego*, 25 F.3d 804, 807-

16  808 (9th Cir. 1994); *Billington v. Smith*, 292 F.3d 1177, 1188 (9th Cir. 2002)

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OBJECTION TO DEFENDANTS'
PROPOSED JURY INSTRUCTION NO. 3**

**LESS INTRUSIVE ALTERNATIVES
TO THE FORCE ACTUALLY USED**

This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction 9.22. After seeking to omit from the jury's consideration the availability of less intrusive alternatives to the force actually used, Defendants also request that the jury be instructed that the Fourth Amendment does not require an officer to use the minimum amount of force necessary to subdue or arrest a person.

In *Brooks v. City of Seattle* --- F.3d — , 4922, 2010 WL 1135776 (9th Cir., 03/26/10), the court cited this language from *Scott v. Heinrich* 39 F.3d 912, 915 (9th Cir. 1994), and then noted that "Determination of that reasonable range requires consideration of the totality of the circumstances, [citation omitted], including whether a warning was given, [citation omitted], and the availability of alternative methods of capturing and subduing a suspect."  Defendants cannot have it both ways.

Numerous decisions of the Ninth Circuit have held that the "availability of alternative methods of capturing or subduing a suspect may be a factor to consider" in determining the objective reasonableness of a particular use of force. In *Smith v. City of Hemet*, 394 F. 3d 689 (9th Cir. 2005), the Court addressed the question of alternative methods of subduing a suspect, and found that such evidence is highly relevant in evaluating the reasonableness of force used. "As we have previously explained, an additional factor that we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect. (*Chew v. Gates*, 27 F.3d at 1441 n.5.)  Smith argues that the officers' conduct violated applicable police standards and that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury (than use of

police dog)…He concluded that the officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground.  A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable. [citations]." *Id.* at p. 249-250 (emphasis added).

The 9th Circuit recently held in *Bryan v. McPherson*,590 F.3d 767, 780 (9th Cir. 2009), that police are "required to consider[w]hat other tactics if any were available to effect the arrest," [citations]. Further, the Court recognized, "the equally settled principle that officers must consider less intrusive methods of effecting the arrest and that the presence of feasible alternatives is a factor to include in our analysis." (*Id.* at 780, fn. 15.)

Reliance upon all of the language Ninth Circuit Model Jury Instruction 9.22 should be adequate in this case.

1

## **DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 4**

2

3

## **OFFICER SAFETY**

4

5   In evaluating the factors described in Instruction No. 19, the officers' safety is

6   the most important of these concerns.

7

8   *Source Authority:*

9   *Mattos v. Agarano*, 590 F.3d 1082, 1088 (9th Cir. 2010); *Miller v. Clark*

10  *County*, 340 F.3d 959, 964 (9th Cir. 2003)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **PLAINTIFF'S OBJECTION TO DEFENDANTS'**

2    **PROPOSED JURY INSTRUCTION NO. 4**

3

4    **OFFICER SAFETY**

5

6        This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction

7    9.22. After seeking to omit from the jury's consideration the availability of less

8    intrusive alternatives to the force actually used, Defendants also seek an implicit

9    modification factor 2 of that instruction which requires the jury to consider

10              Whether the plaintiff posed an immediate threat to the

11              safety of the officers or others.

12        The defendants' instruction implicitly removes consideration of the immediacy

13    of the threat to the officers and subordinates the importance of all of the other factors

14    listed in 9.22.  Although language similar to this instruction can be found throughout

15    Ninth Circuit case law, there is no authority to support the drastic change that this

16    language would have if it was used in lieu of, or as a conflicting supplement to Ninth

17    Circuit Model Jury Instruction 9.22.

18

19

20

21

22

23

24

25

26

27

28

1

## DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 5

2

3

## SPLIT-SECOND DECISIONS

4

5      In assessing the danger which the police officers confronted, please keep in

6  mind that officers are often forced to make split-second judgments in circumstances

7  which are tense, uncertain, and rapidly evolving about the amount of force which is

8  necessary in a particular situation.

9

10 *Source Authority:*

11      *Mattos v. Agarano*, 590 F.3d 1082, 1088 (9th Cir. 2010); *Billington v. Smith*,

12 292 F.3d 1177, 1184 (9th Cir. 2002); *Jackson v. City of Bremerton*, 268 F.3d 646, 651

13 (9th Cir. 2001); *Cox v. Treadway*, 75 F.3d 230, 236 (6th Cir. 1996)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF'S OBJECTION TO DEFENDANTS'

## PROPOSED JURY INSTRUCTION NO. 5

Plaintiff did not object to defendants' Special Jury Instruction No. 5.

# DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 6

## DOMESTIC VIOLENCE INVESTIGATIONS

The law recognizes the dangerous nature of domestic violence situations. In responding to domestic violence calls, police officers confront a dangerous and volatile situation.

Police are required by law to thoroughly investigate reports of domestic violence. The responding officers must interview the people involved, determine whether probable cause exists to make an arrest, arrest any involved individual as to whom probable cause exists to believe that domestic violence was committed, and protect the reported victims of domestic violence.

*Source Authority:*

*Mattos v. Agarano*, 590 F.3d 1082, 1088-1089 (9th Cir. 2010); *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 700-701 (9th Cir. 1990); *Navarro v. Block*, 72 F.3d 712, 715 (9th Cir. 1996); Cal. Penal Code §137.01(a) and (b)

## PLAINTIFF'S OBJECTION TO DEFENDANTS'
## PROPOSED JURY INSTRUCTION NO. 6

## DOMESTIC VIOLENCE INVESTIGATIONS

This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction 9.22. Defendants seek to cast the circumstances of this case as inherently dangerous by mere virtue of the fact that the call came in as a domestic violence call. While it is true that domestic violence calls can be dangerous, the same can be said for almost every type of law enforcement call including traffic stops, reports of emotionally disturbed or intoxicated people etc.

In *Smith v. City of Hemet*, 394 F. 3d 689 (9th Cir. 2005), the suspect's wife called the police to report that he had physically abused her. Acknowledging "the seriousness and reprehensibility of domestic abuse," the court nonetheless held that "the circumstances are not such in this case as to warrant the conclusion that Smith was a particularly dangerous criminal or that his offense was especially egregious." *Smith,* 394 F.3d at 702-03. The court concluded that "the nature of the crime at issue provides little, if any, basis for the officers' use of physical force." *Id.* at 703.

Defendants are free to put on evidence of the unique dangers associated with domestic violence calls, but it is unnecessary to instruct the jury with the language suggested by the Defendants.

# DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 7

## DUTY TO RETREAT

A police officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape, or to overcome resistance. A police officer who makes or attempts to make an arrest need not retreat or desist from such efforts by reason of the resistance or threatened resistance of the person being arrested. Nor shall such officer be deemed the aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or overcome resistance.

*Source Authority:*

*Reed v. Hoy*, 909 F.2d 324, 330-331 (9th Cir. 1989); Cal. Penal Code §835(a)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S OBJECTION TO DEFENDANTS'**

**PROPOSED  JURY INSTRUCTION NO. 7**

**DUTY TO RETREAT**

This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction 9.22 which states that a "seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest or in defending himself or others." Further instruction is unnecessary.

1

2

3

## DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 8

## DUTY NOT TO RESIST

4

5

6

7

   If a person has knowledge, or by the exercise of reasonable care should have knowledge, that he is being arrested by a peace officer, it is the duty of such person to refrain from using force to resist arrest.

8

9

*Source Authority:*

10

   *Reed v. Hoy*, 909 F.2d 324, 330-331 (9th Cir. 1989); Penal Code §834(a)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PLAINTIFF'S OBJECTION TO DEFENDANTS'**

2

**PROPOSED JURY INSTRUCTION NO. 8**

3

4

**DUTY NOT TO RESIST**

5

6

This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction

7

9.22 which states that a "seizure of a person is unreasonable under the Fourth

8

Amendment if a police officer uses excessive force in making a lawful arrest or in

9

defending himself or others." Further instruction is unnecessary.

10

The instruction is also misleading because a person has a right to defend

11

himself from an unlawful arrest in which the officer is uses excessive force against

12

him.  As the court noted in *Smith v. Hemet* (2004) 356 F.3d 1138, 1142, fn 4,

13

California law provides that:

14

      A peace officer is not permitted to use unreasonable or

15

      excessive force [in making or attempting to make an

16

      otherwise lawful arrest]. . .

17

          If an officer does use unreasonable or excessive force

18

      [in making or attempting to make an arrest] [in detaining or

19

      attempting to detain a person for questioning], the person

20

      being [arrested] [detained] may lawfully use reasonable

21

      force to protect [himself] [herself].

22

(See also *People v. White*, (1980) 101 Cal.App.3d 161, 166–169, *People v. Curtis*,

23

(1969) 70 Cal.2d 347, 351–351.)

24

Recently, in *People v. Adams* (2009)176 Cal.App.4th 946, a California Court

25

of Appeal reexamined the law in this area and held that:

26

      the use of unreasonable or excessive  force to make an

27

      arrest constitutes a public offense. ( *People v. Soto* (1969)

28

      276 Cal.App.2d 81, 85.)  And all persons have a right to

prevent injury to themselves by resisting a public offense (Pen.Code, § 692). Moreover, a person who uses reasonable force to protect himself [...] against the use of [...] excessive force in making an arrest is not guilty of any crime. ['] ( *Soto,* at p. 85, 80 Cal.Rptr. 627.)    The right to resist excessive force used to make an arrest is an application of the law of self-defense. (*People v. Curtis* [(1969)] 70 Cal.2d [347,] 356, 74 Cal.Rptr. 713, 450 P.2d 33.)" The Attorney General, having found no authority to suggest otherwise, emphasized that the rules of self-defense apply equally in the contexts of a citizen's arrest and a peace officer's arrest.  We agree.  *Id.*  at 952-953.

Thus, the language requested by the defendants is misleading and incomplete.

# DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 9

## NONVIOLENT RESISTANCE

A person's resistance to officers' efforts to bring him under control is a factor justifying force. Resistance includes behavior which may not necessarily have been violent or aggressive. Examples of non-violent but active resistance weighing in favor of application of reasonable force include stiffening an arm, attempting to pull away from the officers, holding onto an object, fleeing, or other actions to defeat the officers' attempts to control him.

*Source Authority:*

    *Brooks v. City of Seattle*, --- F.3d ----, 2010 WL 1135776 (9th Cir., 3/26/10) [at pages 2 and 9, Sections III.A.1 and III.A.2.b.iii]; *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001)

## PLAINTIFF'S OBJECTION TO DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 9

## NONVIOLENT RESISTANCE

Here again, this instruction is unnecessary in light of Ninth Circuit Model Jury Instruction 9.22 which allows consideration of whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight.

Because, as noted in the objection to Instruction No. 24, a person has the right to resist an arrest made with excessive force, (see *People v. Adams* (2009) 176 Cal.App.4th 946, 953), there can be little doubt that a person is entitled to use the less violent alternative of fleeing such an arrest.

Accordingly, the proposed language is misleading and incomplete and should not be given.

1

## DEFENDANTS' SPECIAL JURY INSTRUCTION NO. 10

2

3

## IRRELEVANCE OF PROBABLE CAUSE TO FORCE

4

5       An arrestee's resistance may support the officers' use of force regardless of

6   whether probable cause to arrest existed.

7

8   *Source Authority:*

9       *Brooks v. City of Seattle*, --- F.3d ----,  2010 WL 1135776 (9th Cir., 3/26/10)

10   [at page 2, Section III.A.1]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>PLAINTIFF'S OBJECTION TO DEFENDANTS'</u>**

**<u>PROPOSED JURY INSTRUCTION NO. 10</u>**

Plaintiff did not object to defendants' Special Jury Instruction No. 10.