1  Alan E. Wisotsky (SBN 68051)
   Jeffrey Held (SBN 106991)
2  LAW OFFICES OF ALAN E. WISOTSKY
   300 Esplanade Drive, Suite 1500
3  Oxnard, California 93036
   Tel:   (805) 278-0920
4  Fax:   (805) 278-0289
   E-mail: lawyers@wisotskylaw.com
5
   Attorneys for Defendants CITY OF SANTA
6  PAULA, SANTA PAULA POLICE
   DEPARTMENT, STEVE MacKINNON, CODY
7  MADISON, and CARLOS MITRE

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MAX VILLANUEVA VASQUEZ, an ) | No. CV 09-02590 DSF (MANx)
   | individual,                  )
12 |                              ) | **PARTIES' DISPUTED JURY**
   |        Plaintiff,            ) | **INSTRUCTIONS**
13 |                              )
14 |   v.                         )
   |                              ) | Second pretrial conference:
15 | THE CITY OF SANTA PAULA,      ) | Date: June 16, 2010
   | et al.,                      ) | Time: 3:00 p.m.
16 |                              ) | Ctrm: 840 Roybal
   |        Defendants.           )
17 | _____ )

18

19 TO THE HONORABLE DALE S. FISCHER, UNITED STATES DISTRICT

20 JUDGE:

21       The parties have met and conferred in good faith with an eye toward resolving

22 as many of their disputes as possible regarding jury instructions, in accordance with

23 the Court's instruction at the initial pretrial conference held on May 3, 2010. The

24 parties have concurrently submitted their set of 31 agreed-upon jury instructions. The

25 parties' dispute has reduced to two jury instructions.

26       Concerning one of the two issues, the parties have completely divergent

27 perspectives and have attached the two competing instructions hereto. The parties

28 have briefed their positions with regard to the two competing instructions.

1  On the second disputed issue, the plaintiff believes that the jury should not be
2  instructed on this topic at all. The defendants' proposed special jury instruction is
3  appended hereto, with the legal positions of the parties briefed thereafter.

Dated: May 28, 2010

BRIAN A. VOGEL
Attorney for Plaintiff

Dated: May 31, 2010

JEFFREY HELD
Law Offices of Alan E. Wisotsky
Attorneys for Defendants

# I.
# COMPETING VERSIONS OF PARTIES' PROFFERED SPECIAL INSTRUCTION

### A. Plaintiff's Proposal

"The availability of alternative methods to take the plaintiff into custody."

[Proposed to be included as element or factor No. 6 of agreed-upon instruction No. 17, which is loosely based upon Manual of Model Ninth Circuit Jury Instructions 9.22.]

### B. Defendants' Proffered Version

"Although there may have been alternative methods of force, police officers are not required to use the least amount of force necessary. The appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them."

### C. Parties' Arguments in Support of Their Competing Versions

(1) <u>Plaintiff's objection to defendants' proposed language re less intrusive alternatives to the force actually used</u>

Defendants seek an instruction which limits the jury's consideration the availability of less intrusive alternatives to the force actually used. The Defendant's proffered language renders the availability of alternative methods to take plaintiff into custody meaningless. In choosing the appropriate amount of force

In *Brooks v. City of Seattle* 599 F.3d 1018 (9th Cir., 2010), the court held as follows:

> The right to employ "some degree of physical coercion or threat thereof" to effect an arrest accompanies the right to make the arrest or investigatory stop,, but the force must be necessary to be reasonable. Where police have control over a suspect, the use of further force to bring the suspect under control may be unreasonable. *See Headwaters Forest Def.*, 276 F.3d at 1125 (use of pepper spray on protesters already

3

> under police control held excessive). Officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct. Determination of that reasonable range requires consideration of the totality of the circumstances, including whether a warning was given, *Deorle v. Rutherford*, 272 F.3d 1272, 1283-84 (9th Cir.2001), and the availability of alternative methods of capturing and subduing a suspect. The fact that a suspect does not threaten the officer does not shield him from the use of force. See *Forrester*, 25 F.3d at 807-09 (finding no Fourth Amendment violation when officers used injury-causing pain compliance techniques on passively resisting demonstrators). (citations omitted)

*Brooks v. City of Seattle* 599 F.3d 1018, 1025 (9th Cir., 2010)

This language accurately states the law and Plaintiff and Defendants have agreed upon other instructions containing some of this language. However, agreement has not been reached on language regarding the availability of lesser intrusive alternatives. Plaintiff simply proposed the language of the Model instruction on this issue. Defendants have requested language which downplays the significance of the availability of alternatives and directs the jury to consider only the reasonableness of the conduct.

Numerous decisions of the Ninth Circuit have held that the "availability of alternative methods of capturing or subduing a suspect may be a factor to consider" in determining the objective reasonableness of a particular use of force. In *Smith v. City of Hemet*, 394 F. 3d 689 (9th Cir. 2005), the Court addressed the question of alternative methods of subduing a suspect, and found that such evidence is highly relevant in evaluating the reasonableness of force used. "As we have previously explained, an additional factor that we may consider in our *Graham* analysis is the availability of alternative methods of capturing or subduing a suspect. (*Chew v. Gates*, 27 F.3d at 1441 n.5.) Smith argues that the officers' conduct violated

applicable police standards and that there were alternative techniques available for subduing him that presented a lesser threat of death or serious injury (than use of police dog)...He concluded that the officers could and should have used control holds to complete the arrest rather than to sic Quando on him once they had him restrained on the ground. A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable. [citations]." *Id.* at p. 249-250 (emphasis added)

The 9th Circuit recently held in *Bryan v. McPherson,* 590 F.3d 767, 780 (9th Cir. 2009), that police are "required to consider[w]hat other tactics if any were available to effect the arrest," [citations]. Further, the Court recognized, "the equally settled principle that officers must consider less intrusive methods of effecting the arrest and that the presence of feasible alternatives is a factor to include in our analysis." (*Id.* at 780, fn 15.)

Reliance upon all of the language set forth in Ninth Circuit Model Jury Instruction 9.22 should be adequate in this case.

  (2) <u>Defense position with respect to lesser intrusive alternatives</u>

There are five Ninth Circuit panel holdings clearly excluding the existence of lesser intrusive alternatives from the Fourth Amendment reasonableness consideration. These five Ninth Circuit panel holdings unmistakably make plaintiff's proffered instruction on this topic against the great weight of authority. Quotations from each of the five panel holdings prove the point:

> Plaintiff argues that the officers should have used alternative measures . . . . But, as the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them. . . . Requiring officers to find and choose the least intrusive alternative would require them to exercise

5

> superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the *least* intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.

*Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (emphasis in original).

Despite these governmental interests, the demonstrators argue that dragging and carrying was a more reasonable means of accomplishing the city's goals and therefore contend that any other method was excessive. Police officers, however, are not required to use the least intrusive degree of force possible. Rather, as stated above, the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene. . . . Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue.

*Forrester v. City of San Diego*, 25 F.3d 804, 807-808 (9th Cir. 1994).

///

> In *Scott v. Henrich*, we held that even though the officers might have had less intrusive alternatives available to them, and perhaps under departmental guidelines should have developed a tactical plan instead of attempting an immediate seizure, police officers need not avail themselves of the least intrusive means of responding . . . .

*Billington v. Smith*, 292 F.3d 1177, 1188 (9th Cir. 2002).

> Although there may have been alternative methods of forcefully moving Jayzel out of the way, officers are not required to use the least amount of force necessary.

*Mattos v. Agarano*, 590 F.3d 1082, 1088-1089 (9th Cir. 2010).

> Officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct. . . . ¶ We agree with the *Forrester* panel here: the district court's general and vague statement that there were numerous other means of removing Brooks reflects after-the-fact speculation and fails to address what else these officers could have done in the situation that confronted them at that moment, when they needed to get the resistant Brooks out of the car to arrest her.

*Brooks v. City of Seattle*, 599 F.3d 1018, 1025, 1029 (9th Cir. 2010).

It is true that there is en banc Circuit dicta to the contrary. *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) [en banc]. Defendants, however, strenuously dispute reliance upon this en banc dicta, for the reasons given below.

(1) There are, as quoted above, five Ninth Circuit panel decisions holding to the contrary.

(2) Two Ninth Circuit panel decisions of the five quoted above post-dated the dicta in *Smith*. Therefore, the most recent authority from the Ninth Circuit

7

supports defendants' position, while contradicting the plaintiff's legal position on this issue. There is no doubt that the *Mattos* and *Brooks* decisions rejected the concept of the relevance of lesser intrusive alternatives in Fourth Amendment search and seizure jurisprudence.

    (3)    The *Mattos* case was factually indistinguishable from the present case. It too involved police response to a domestic violence call in which an electronic control device was utilized to bring a non-violently resisting subject under control. The *Mattos* decision, which completely supports the defendants' legal position in this issue, not only post-dates the en banc dicta in *Smith*, but arose in a factually indistinguishable context.

    (4)    The only issue for resolution in the *Smith v. City of Hemet* case was whether a §1983 action was barred under the United States Supreme Court decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). The opening sentence of the opinion says as much:

> We took this case en banc to clarify the law regarding whether, under *Heck v. Humphrey*, ... a §1983 action for excessive force is necessarily barred by a plaintiff's conviction under California Penal Code §148(a)(1) for willfully resisting, delaying, or obstructing a peace officer in the performance of his duties.

The availability of less intrusive alternatives was not necessary to the resolution of that issue. The holding and rationale were that a guilty plea to a resisting arrest charge would not necessarily imply the invalidity of a successful §1983 action, because the alleged excessive force might have occurred before or after the resistance. Statements of a court which are not necessary for the resolution of the issue before it are considered obiter dicta and are not precedent within the meaning of stare decisis. *Ayala v. United States*, 550 F.2d 1196, 1200 (9th Cir. 1997).

///

(5) The *Smith* court did not recognize the lesser intrusive alternatives holdings of the then-existing three panel decisions to the contrary, nor did it purport to overrule them. Two of the three are mentioned, but not on this issue. En banc dicta which neither mentions nor overrules previously decided contrary panel decisions cannot be authority for their implicit repeal.

(6) The landmark United States Supreme Court decision regarding §1983 excessive force allegations is *Graham v. Connor*, 490 U.S. 386 (1989). At 396, the oft-quoted admonition that "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" was stated. Numerous Ninth Circuit decisions rely upon that quote, including *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001), *Mattos v. Agarano*, 590 F.3d 1082, 1088 (9th Cir. 2010), and *Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007). Allowing discussion of other ways of accomplishing the restraint of the subject would violate that admonition by allowing a prohibited retrospective critique.

(7) There is no analytical grappling by the *Hemet* dicta with the key reason for the rule excluding the availability of less intrusive alternatives from Fourth Amendment jurisprudence. The phraseology of constitutional amendments is honored, according to the Supreme Court, notwithstanding the seeming parsing of language over a plausible alternative. In *Chavez v. Martinez*, 538 U.S. 760 (2003), the phraseology of the Fifth Amendment that "no person shall be compelled in any criminal case to be a witness against himself" was construed to mean that if any un-*Mirandized* admission was not used in a criminal proceeding, the Fifth Amendment, with its easier-to-satisfy reasonableness standard, was inapplicable.

The Fourth Amendment, by parity of reasoning, does not require the most reasonable search or seizure, just a reasonable one. If that constitutional restriction read "the most reasonable seizure," anything less would be in play. *Schulz v. Long*, 44 F.3d 643, 649 (8th Cir. 1995) ["However, the Fourth Amendment does not allow

1  this type of 'Monday morning quarterback' approach because it only requires that the
2  seizure fall within a range of objective reasonableness . . . . The Fourth Amendment
3  inquiry focuses not on what the most prudent course of action may have been or
4  whether there were other alternatives available, but instead whether the seizure
5  actually effectuated falls within a range of conduct which is objectively 'reasonable'
6  under the Fourth Amendment."].
7       It is therefore respectfully requested that the Court follow the holdings of the
8  five panel decisions, *Scott, Forrester, Billington, Mattos,* and *Brooks,* in preference
9  to the en banc dicta in *Smith*. Plaintiff's requested instruction would contravene the
10 five panel holdings, while defendants' proposed instruction in this regard supports
11 them.

## II.
## SECOND DISPUTED PROFFERED INSTRUCTION

**A.   Plaintiff's Version**

The plaintiff does not believe that any instruction in this regard should be given, so plaintiff has no proffered instruction.

**B.   Defendants' Proffered Instruction Regarding Uniqueness of Domestic Violence Cases**

The volatility of situations involving domestic violence makes them particularly dangerous.

Police are required by law to thoroughly investigate reports of domestic violence. The responding officers must interview the people involved, determine whether probable cause exists to make an arrest, arrest any involved individual as to whom probable cause exists to believe that domestic violence was committed, and protect the reported victim of domestic violence.

26  ///
27  ///
28  ///

C. **Parties' Positions Regarding Defendants' Proffered Domestic Violence Instruction**

(1) <u>Plaintiff's objection to defendants' proposed language re domestic violence investigations</u>

This instruction is unnecessary in light of Ninth Circuit Model Jury Instruction 9.22. Defendants seek to cast the circumstances of this case as inherently dangerous by mere virtue of the fact that the call came in as a domestic violence call. While it is true that domestic violence calls can be dangerous, the same can be said for almost every type of law enforcement call including traffic stops, reports of emotionally disturbed or intoxicated people etc.

In *Smith v. City of Hemet*, 394 F. 3d 689 (9th Cir. 2005), the suspect's wife called the police to report that he had physically abused her. Acknowledging "the seriousness and reprehensibility of domestic abuse," the court nonetheless held that "the circumstances are not such in this case as to warrant the conclusion that Smith was a particularly dangerous criminal or that his offense was especially egregious." *Smith,* 394 F.3d at 702-03. The court concluded that "the nature of the crime at issue provides little, if any, basis for the officers' use of physical force." *Id.* at 703.

Defendants are free to seek admission of evidence of the unique dangers associated with domestic violence calls, but it is unnecessary to instruct the jury with the language suggested by the Defendants.

(2) <u>Defense position with respect to domestic violence instruction</u>

In a very recent Ninth Circuit decision approximating the factual context of the current case, involving police response to a domestic violence call in which a non-violently resisting person was taken into custody by use of an electronic control device, the uniqueness of domestic violence calls was well recognized. In *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), the court stated:

///

///

> We have observed that the volatility of situations involving domestic violence makes them particularly dangerous. *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir.2005) When officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning. Indeed, more officers are killed or injured on domestic violence calls than on any other type of call. *Id.* . . . ; see also *United States v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2007) ("Our circuit has recognized that the exigencies of domestic abuse cases present dangers that . . . may override considerations of privacy.").

*Mattos*, 590 F.3d at 1088.

The Ninth Circuit has twice held that if police do not promptly, thoroughly, and protectively investigate domestic abuse cases, they can be civilly liable. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 700-701 (9th Cir. 1990), and *Navarro v. Block*, 72 F.3d 712, 715 (9th Cir. 1996). California Penal Code §13701(b) requires that police agencies "shall encourage the arrest of domestic violence offenders if there is probable cause that an offense has been committed." Police policies must discourage dual arrests; peace officers must make reasonable efforts to identify the "dominant aggressor in any incident." The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor. In identifying the dominant aggressor, the officers must consider the intent of the law to protect victims of domestic violence from continuing abuse and the threats creating fear of physical injury.

To allow a case to go to a jury without instruction about these unique facets of domestic violence cases would be to ignore the statements of the court in *Mattos* and the requirements uniquely imposed upon officers responding to these calls as imposed

/ / /

1  by *Balistreri, Navarro,* and Penal Code §13701. It is therefore respectfully requested
2  that the Court charge the jury with this proffered defense instruction No. 2.

Respectfully jointly submitted,

Dated: May 28, 2010

_____
BRIAN A. VOGEL
Attorney for Plaintiff

Dated: May 31, 2010

_____
JEFFREY HELD
Law Offices of Alan E. Wisotsky
Attorneys for Defendants