Alan E. Wisotsky (SBN 68051)
Jeffrey Held (SBN 106991)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California 93036
Tel: (805) 278-0920
Fax: (805) 278-0289
E-mail: lawyers@wisotskylaw.com

Attorneys for Defendants CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, CODY MADISON, and CARLOS MITRE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX VILLANUEVA VASQUEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SANTA PAULA, et al.,<br><br>Defendants. | No. CV 09-02590 DSF (MANx)<br><br>**DEFENDANTS' OBJECTIONS TO CERTAIN ITEMS SPECIFIED IN BILL OF COSTS; DECLARATION OF JEFFREY HELD IN SUPPORT THEREOF**<br><br>Date: August 12, 2010<br>Time: 11:00 a.m.<br>Location: Submitted/telephonic |

TO PLAINTIFF, MAX VASQUEZ, AND TO HIS ATTORNEY OF RECORD, LAW OFFICES OF BRIAN A. VOGEL BY BRIAN A. VOGEL:

PLEASE TAKE NOTICE that defendants request the Clerk's designee, Lydia Yurtchuk, to strike two claimed items from the bill of costs. These two objections by defendants are submitted in accordance with Central District Local Rule 54-7. The grounds for each objection are specifically stated below.

## I.

## PLAINTIFF CANNOT RECOVER THE COSTS FOR THE SMITH, MacKINNON, AND MANNING DEPOSITIONS

On page 11 of the 15 pages filed in support of the cost bill, plaintiff claims deposition charges of three individuals. These are Ryan Smith, Stephen MacKinnon,

1

1  and Robert David Manning. The total charge claimed for these three depositions is
2  $1,240.85.
3       The plaintiff is not entitled to recover the costs of these three depositions:
4       1.    Ryan Smith:
5            (a)    Sgt. Smith was dismissed from the lawsuit with prejudice, without
6  costs, by court order dated April 26, 2010. This is website docket entry 107. The
7  order specifically provides that plaintiff recovered nothing against Sgt. Smith. It
8  states on page 1, lines 24-26, "Neither party will take anything, including past,
9  present or future damages, attorneys' fees or costs from the other . . . ."
10           (b)    Sgt. Smith arrived after all of the events involving the plaintiff
11 were over. He saw nothing of significance regarding the arrest, apprehension, and
12 use of force against the plaintiff. His testimony was valueless to the case.
13           (c)    Ryan Smith never authored any report or written document
14 whatsoever. Therefore, plaintiff would have known from the early meeting of
15 counsel disclosures and written discovery that Sgt. Smith would have nothing of
16 value to add to the testimony in the case. Taking his deposition was pointless.
17           (d)    Not only did plaintiff not prevail against Sgt. Smith, Sgt. Smith
18 never even testified in the trial of this lawsuit. The plaintiff never called Sgt. Smith
19 to testify, and neither did the defendants.
20           (e)    The plaintiff should not be able to recover the costs of a deponent
21 as to whom the plaintiff ought to have known had no knowledge about the facts of
22 the case and who did not provide any useful data in his deposition, was dismissed
23 with prejudice for no payment of money, and never testified at trial.
24      2.    Stephen MacKinnon:
25           (a)    Police Chief MacKinnon was never at the location of the incident
26 at all. He had no involvement whatsoever with the operative facts or the events of the
27 case. He never knew the plaintiff, never touched the plaintiff, and never issued any
28 instructions, orders, or directives to the involved officers concerning the plaintiff.

(b) Steve MacKinnon had nothing of value to add to the case; there was no reason to depose him. He did not write any reports about the events involving the plaintiff, nor did he author any declarations in support of a dismissal motion, nor is there any writing whatsoever from him. Costs of unnecessary and pointless depositions are not recoverable.

(c) Chief MacKinnon was never called to testify during the trial, either by the plaintiff or by the defendants. He offered no trial testimony whatsoever and did not attend the trial.

(d) The plaintiff did not prevail in any sense whatsoever against Chief MacKinnon. No judgment was entered against Chief MacKinnon, and his name did not even appear as a party defendant in the verdict submitted to the jury.

(e) The only arguable relevance of Chief MacKinnon was strictly as an entity liability actor, the chief decision-maker for the police department. But this reason is completely insufficient to warrant any imposition of liability or costs against the police chief. The Central District has specifically held, in a published decision, that there is no reason to name the chief individually, because the naming of the police department or the municipality fully suffices to bring the entity liability issues before the court. *Luke v. Abbott*, 954 F.Supp. 202, 203-204 (C.D. Cal. 1997).

Further, the Ninth Circuit has specifically held that it is even frivolous and without merit to pursue entity liability issues if there is no evidence indicating a deliberately indifferent custom, practice, or policy which proximately caused the deprivation of the plaintiff's federally protected civil rights. *Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007), holding that the plaintiff-arrestee's post-discovery litigation of the *Monell* entity liability claim was frivolous, supporting an award of attorney's fees to the county. 477 F.3d at 667-668. Plaintiff here never found any entity liability evidence against anyone, the Chief or the City. The plaintiff never even reached the entity liability phase of the trial and, under Court suggestion, ended up dismissing the City and the Chief.

3.  Robert David Manning:

 (a) Mr. Manning was a Taser training officer for the Santa Paula Police Department. He was not present at the scene of the incident, nor did he have any involvement with the plaintiff whatsoever. He did not give any instructions, advice, or orders to the two involved officers about Max Vasquez.

 (b) Mr. Manning did not write any reports in this matter and did not submit any declarations. There is no reason to believe that he had any involvement in the facts of the case. Deposing him was pointless and warrants no fees or costs to the plaintiff, under the *Galen* decision.

 (c) Mr. Manning never testified at trial. Like Chief MacKinnon and Sgt. Smith, Mr. Manning was not called to testify during the trial by either side.

 (d) The plaintiff did not succeed against Mr. Manning, nor was any verdict or judgment rendered against Mr. Manning. Mr. Manning's name was not even on the verdict form.

 (e) There was no *Monell*-entity liability phase of the trial whatsoever, so the plaintiff did not in any sense whatsoever succeed or prevail against Mr. Manning or the City or the police department.

## II.

## THE PLAINTIFF IS NOT ENTITLED TO RECOVER $2,556 IN COMPLETELY UNSPECIFIED COPYING COSTS

On page 13 of the documents in support of the bill of costs, there is a charge of $2,556 for completely unspecified photocopying charges. It is not stated which items were copied or for what purpose.

Further, there are no supporting documents showing that the claimed charge of $2,556 was paid. There are no canceled checks, debit card receipts, cashier's checks, or paid invoices. All that the defendants have to prove that these charges were incurred is plaintiff's attorney's word for it. Page 13 of the 15 pages filed in

support of the cost bill is nothing more than a bald and unilluminating assertion that plaintiff's counsel paid $2,556 for unspecified copies. But there is no supporting documentation, such as paid invoices or canceled checks, to prove that these charges were actually incurred or paid.

There is no statement that a bill was submitted to plaintiff's counsel. There is no bill or invoice supporting these charges. Defendants have no way of knowing to whom this money was paid, how the copies were made, whether the copies were made by an outside copy service, or for what purpose these copies were made, specifically, within the context of the litigation. Without knowledge of their purpose, defendants cannot discern their necessity.

The only information provided is that 8,822 copies were made by an unspecified person for an unspecified reason. It is stated that $2,205 was spent for black-and-white photocopies and $351 for color copies. But there is no invoice showing that plaintiff's counsel was charged for these copies, that he actually paid for them, or what their identity, description, or purpose was.

## III.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that $3,796.85 be stricken from the cost bill. This requested figure is comprised of the $1,240.85 attributable to the unnecessary Smith, MacKinnon, and Manning depositions and the $2,556 of completely unspecified copying costs. It is therefore respectfully requested that the cost award in this matter be $3,598.95.

Dated: July 30, 2010

LAW OFFICES OF ALAN E. WISOTSKY

By: /s/ Jeffrey Held
JEFFREY HELD
Attorneys for Defendants, CITY OF SANTA PAULA, SANTA PAULA POLICE DEPARTMENT, STEVE MacKINNON, CARLOS MITRE, and CODY MADISON

## DECLARATION OF JEFFREY HELD

I, Jeffrey Held, declare:

1. I am an attorney admitted to practice law before all the courts of the State of California and the United States District Court, Central District of California. I am employed as an attorney in the Law Offices of Alan E. Wisotsky, counsel of record for defendants.

2. I make this declaration based upon information which is personally known to me. If called to testify as a witness to the information contained in this declaration, I would competently and truthfully do so under penalty of perjury of the laws of the United States of America.

3. Sgt. Ryan Smith arrived after all of the events involving the plaintiff were over. He saw nothing of significance regarding the arrest, apprehension, and use of force against the plaintiff. His testimony was valueless to the case.

4. Sgt. Ryan Smith never authored any report or written document whatsoever. Plaintiff should have known from the early meeting of counsel disclosures and written discovery that Sgt. Smith would have nothing of value to add to the testimony in the case. Taking Sgt. Smith's deposition was pointless.

5. Sgt. Smith was dismissed from the lawsuit with prejudice, without costs, by court order dated April 26, 2010. This is website docket entry 107. The order by Judge Fischer specifically provides that plaintiff was to recover nothing against Sgt. Smith. Her order states, in relevant part, on page 1, lines 24-26, that "Neither party will take anything, including past, present or future damages, attorneys' fees or costs from the other . . . ."

6. Not only did plaintiff not prevail against Sgt. Smith, Sgt. Smith never even testified in the trial of this lawsuit. The plaintiff never called Sgt. Smith to the stand, and defendants did not put on the testimony of Sgt. Smith at all.

///

7. Police Chief MacKinnon was never at the location of the incident at all. He had no involvement whatsoever with the operative facts or the events of the case. He never knew the plaintiff and never touched the plaintiff, nor did he issue any commands, instructions, directives, or suggestions to the involved officers concerning the plaintiff, Max Vasquez, at all.

8. Chief Steve MacKinnon had nothing of value to add to the case. There was no reason to depose him. He did not write any reports about the events involving the plaintiff, nor did he author any declarations in support of a dismissal motion, nor is there any writing whatsoever from him. Costs of unnecessary and pointless depositions are not recoverable.

9. Chief MacKinnon was never called to testify during the trial, either by the plaintiff or by the defendants. He offered no trial testimony whatsoever, nor did he even attend the trial.

10. The plaintiff did not prevail in any sense against Chief MacKinnon. No judgment was entered against Chief MacKinnon. His name did not even appear as a party defendant in the single verdict submitted to the jury.

11. The plaintiff never discovered any evidence whatsoever to establish an entity liability case against the City, the police department, or Chief MacKinnon. There never was any evidence indicative of the requisite deliberately indifferent custom, practice, or policy proximately causing the deprivation of the plaintiff's federally protected civil rights. The plaintiff's post-discovery litigation of the *Monell* entity liability claim was wholly baseless.

12. Corroborative of the statements in the preceding paragraph, the plaintiff never reached an entity liability phase of the trial. Under court suggestion, following the conclusion of the phase one trial, the plaintiff ended up dismissing the City of Santa Paula, the police department, and Chief MacKinnon. This was well warranted, because discovery never turned up any liability evidence against anyone.

///

13. Robert David Manning was a Taser training officer for the Santa Paula Police Department. He was not present at the scene of the incident, nor did he have any involvement with plaintiff Max Vasquez whatsoever. He did not give any instructions, advice, or commands to the two involved officers. He did not have any involvement with Max Vasquez or this incident whatsoever.

14. Mr. Manning did not write any reports in this matter. He did not submit any declarations. There is no reason whatsoever to believe that he had any involvement in the facts of this case. Deposing him was pointless, and there was never any reason to believe there was a need to take his deposition.

15. Mr. Manning also never testified at trial. He was not called to testify during the trial of this case by either side.

16. The plaintiff did not succeed against Mr. Manning. There was no verdict or judgment rendered against him. Mr. Manning's name never even appeared on the single verdict form.

17. There having been no *Monell*-entity liability phase of the trial, the plaintiff did not prevail in any sense whatsoever against Mr. Manning, the police department, or the City.

18. Page 13 of the documents in support of the cost bill lists a charge of $2,556 for completely unspecified photocopying charges. It is not stated which items were copied or for what purpose they were copied.

19. There are no supporting documents showing that the claim charge was paid. There are no canceled checks, no debit card receipts, no cashier's checks, and no paid invoices. All that the defendants have to prove that these charges were incurred is plaintiff's attorney's word for it.

20. There is no supporting documentation for these charges, such as paid invoices or canceled checks, to prove that the charges were actually incurred or were paid.

///

21.    There is no statement, whether by invoice or declaration, indicating that a bill was submitted to plaintiff's counsel for these copying charges now being claimed. There is no bill or invoice supporting that plaintiff's counsel was ever even charged for these items or paid for these copies.

22.    Defendants also have no way of knowing to whom, if anyone, this money was paid, how the photocopies were made, whether the photocopies were made by an outside copy service, or for what purpose these copies were made.

23.    Without knowledge of the purpose of these photocopies within the context of this litigation, defendants cannot discern their necessity.

24.    The mathematics of the deduction calculations is that $1,240.85 attributable to the pointless and unnecessary Smith, MacKinnon, and Manning depositions be stricken and that $2,556 representing the completely undocumented copying costs be likewise stricken. Subtracting that total amount of $3,796.85 from the total claimed, the correct cost award in this matter would be $3,598.95.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 30, 2010, at Oxnard, California.

_____
JEFFREY HELD