Amitai Schwartz (State Bar No. 55187)
Law Offices of Amitai Schwartz
Watergate Towers
2000 Powell Street, Suite 1286
Emeryville, CA 94608
Telephone:  (510) 597-1775
Facsimile:   (510) 597-0957
Email: attorneys@schwartzlaw.com

Brian A. Vogel (State Bar No. 167493)
The Law Offices of Brian A. Vogel, Pc
770 County Square Dr., Ste. 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
E-Mail: brian@bvogel.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX VILLANUEVA VASQUEZ, <br><br> Plaintiff, <br><br> vs. <br><br> THE CITY OF SANTA PAULA, et al., <br><br> Defendants. | Case No. CV09-2590 DSF (MAN) <br><br> PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES <br><br> Date:        November 1, 2010 <br> Time:       1:30 p.m. <br> Place:      Courtroom 840 <br>                 Roybal Building <br><br> Hon. Dale S. Fischer |

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)

# TABLE OF CONTENTS

A.    Background and Procedural History                                    1

B.    Plaintiff is the Prevailing Party                                    5

C.    Plaintiff is Entitled to a Fee Award                                 5

      1.    Ninth Circuit Precedent Requires An Award
            of Attorney's Fees                                             5

      2.    Defendant Waived the Right to Object
            to Attorney's Fees                                             10

D.    Plaintiff is Entitled to The Lodestar Fees                          13

      1.    Hours Reasonably Expended                                     13

      2.    Reasonable Hourly Rates                                       14

      3.    The Lodestar Amount Should Not Be
            Diminished Due to the Amount of Damages
            Awarded in this Case                                          17

E.    Post-Judgment Interest on Fees                                      19

F.    Fees and Expenses for Fee Motion                                    19

G.    Plaintiff's Attorney's Expenses                                     21

H.    Summary of Fees and Expenses Sought                                 21

I.    Conclusion                                                          22

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    i

# TABLE OF AUTHORITIES

<u>Cases</u>

Atkins v. Miller
 CV 01-01574 DDP (C.D. Aug. 27, 2007) .......... 16

Bank of the West v. Superior Court
 2 Cal.4th 1254 (1992) .......... 12

Bell v. Clackamas County
 341 F.3d 858 (9th Cir. 2003) .......... 14

Bernardi v. Yeutter
 951 F.2d 971 (9th Cir. 1991) .......... 20

Camacho v. Bridgeport Financial, Inc.
 523 F.3d 973 (9th Cir. 2008) .......... 14, 20

City of Atascadero v. Merrill Lynch, Pierce, Fenner
 & Smith, Inc.
 68 Cal.App.4th 445 (1998) .......... 12

Clark v. City of Los Angeles
 803 F.2d 987 (9th Cir. 1986) .......... 20

Democratic Party of Washington State v. Reed
 388 F.3d 1281 (9th Cir. 2004) .......... 13

Farrar v. Hobby
 506 U.S. 103 (1992) .......... 5, 6, 8

Ferland v. Conrad Credit Corp.
 244 F.3d 1145 (9th Cir. 2001) .......... 13

Fitzgerald v. City of Los Angeles
 CV 03-01876 DDP, 2009 WL 960825
 (C.D. Cal. April 7, 2009) .......... 15

Friend v. Kolodzieczak
 72 F.3d 1386 (9th Cir. 1995)
 cert. denied 516 U.S. 146 (1996) .......... 19

Gates v. Deukmejian
 987 F.2d 1392, 1397 (9th Cir. 1992) .......... 13, 14

Guy v. City of San Diego
 608 F.3d 582 (9th Cir. 2010) .......... 6-8, 10

Hashimoto v. Dalton
 118 F.3d 671 (9th Cir.) cert. denied
 523 U.S. 1122 (1998) .......... 5

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    ii

Hensley v. Eckerhart
  461 U.S. 424 (1983)                                              5, 13, 18

In re Fremont General Corporation
  Case No. 8:08-bk-13421-ES (Bankr. C.D. Cal.)                        16, 17

In re Yermakov
  718 F.2d 1465 (9th Cir. 1983)                                            16

Jones v. City of Los Angeles
  CV 03-1142-R (C.D. Cal. Dec. 8, 2008)                                    15

Lauderdale, et al. v. City of Long Beach
  CV 09-979 ABC (C.D. Cal. Jan. 11, 2010)                                  16

Mahach-Watkins v. Depee
  593 F.3d 1054 (9th Cir. 2010)                                      6, 8-10

McLean v. Runyon
  222 F.3d 1150 (9th Cir. 2000)                                             8

Mendez  v. County of San Bernardino
  540 F.3d 1109 (9th Cir. 2008)                                         5, 12

Missouri v. Jenkins
  491 U.S. 274 (1989)                                                      14

Molina v. Richardson
  578 F.2d 846 (9th Cir. 1978)                                            11

Morales v. City of San Rafael
  96 F.3d 359 (9th Cir. 1996)                                             17

Moreno v. City of Sacramento
  534 F.3d 1106 (9th Cir. 2008)                                        13, 19

Multi-Ethnic Immigrant Workers Organizing Network v.
  City of Los Angeles
  CV 07-3072 AHM (C.D. Cal. Jun. 24, 2009)                               16

Pacific Rys. Advertising Co. v. Carr
  29 Cal.App. 722 (1916)                                                  11

Parsons v. Bristol Development Co.
  62 Cal.2d 861 (1965)                                                    12

Perdue v. Kenny A. ex rel. Winn
  130 S.Ct. 1662 (2010)                                              13, 14, 19

Prison Legal News v. Schwarzenegger
  608 F.3d 446 (9th Cir. 2010)                                            14

Richlin Sec. Service Co. v. Chertoff
  553 U.S. 571 (2008)                                                     14

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                        iii

Stanford Daily v. Zurcher
  366 F.Supp. 18 (N.D. Cal. 1973) rev'd on
  other grounds 436 U.S. 547 (1978)                                          11

Stivers v. Pierce
  71 F.3d 732 (9th Cir. 1995)                                                 6

Tahara v. Matson Terminals, Inc.
  511 F.3d 950 (9th Cir. 2007)                                               13

United Steelworkers of America v. Phelps Dodge Corp.
  896 F.2d 403 (9th Cir. 1990)                                               21

Westerlund v. Landmark Aviation
  Case No. CV09-0686 GW (PLAx)
  2010 WL 3171044 (C.D.Cal. Aug. 9, 2010)                                    16

Wilcox v. City of Reno
  42 F.3d 550 (9th Cir. 1994)                                             6, 10

Wilkins v. Gaddy
  130 S.Ct. 1175 (2010)                                                       9

Williams v. Horvath
  16 Cal.3d 834 (1976)                                                      11

Statutes and Rules

11 U.S.C. § 330(a)(3)(F)                                                     16

28 U.S.C. § 1961(a)                                                          19

42 U.S.C. § 1983                                                        1, 5, 11

42 U.S.C. § 1988(b)                                                        5, 19

Cal. Civ. Code § 1636                                                        12

Cal. Gov. Code § 825                                                        11

Other Authorities

Hadfield, 2005 Stanford Law Review Symposium:
  the Civil Trial: Adaptation and Alternatives, Exploring
  Economic and Democratic Theories of Civil Litigation
  Differences Between Individual and Organizational Litigants
  in the Disposition of Federal Civil Cases
  57 STAN. L. REV. 1275 (2005)                                               15

Refo, The Vanishing Trial
  J. SEC. LITIG. A.B.A., Winter 2004                                         15

Rest.2d  Contracts §73 Comment b                                            11

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                        iv

Brian Vogel represented plaintiff Max Vasquez, the prevailing party in this action brought under 42 U.S.C. § 1983.[1]  Plaintiff prevailed against defendant Cody Madison, a senior police officer of the City of Santa Paula Police Department.   The jury awarded nominal damages.  Plaintiff seeks an award of attorney's fees and expenses.

A.   Background and Procedural History

On April 15, 2007 Plaintiff left his girlfriend, April Clanton, at their residence in the City of Santa Paula after a verbal argument.  Plaintiff then went to the home of his mother, Janet Vasquez, located at 759 Fillmore Street, Santa Paula.  Around 8:00 p.m. Santa Paula police officers Carlos Mitre and Cody Madison responded to a potential domestic disturbance at the Fillmore Street residence.

Officer Madison is approximately 6'2", 240 lbs.  He was the first officer to arrive in response to April Clanton's call for assistance in which she claimed Plaintiff Max Vasquez had pushed her and slammed a gate into her arm.  April also claimed that Plaintiff's mother was refusing to return their daughter to April. Officer Madison testified at trial that when he arrived, he saw Plaintiff walk quickly to the front door of the house where he began knocking loudly and requested that someone open the door.  Officer Madison approached Plaintiff, ordered him to step away from the door and to sit down.  Plaintiff eventually sat down in the driveway and answered the officer's questions.  Madison claimed that he noticed Plaintiff was bleeding from several small lacerations on his forearms. Plaintiff testified at trial that he was not bleeding until after the officers used force on him.  While Plaintiff was still seated, Officer Mitre arrived.

---

[1] For the convenience of the Court, a copy of the docket sheet is attached as Exhibit E to the Declaration of Amitai Schwartz.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    1

Madison asked Mitre to watch Vasquez while Madison went to speak with Ms. Clanton.  Almost immediately after Officer Madison began to walk away, Plaintiff stood up from his seated position.

Witness Jennifer Jump, a neighbor who had come over to briefly babysit Plaintiff's child, looked out through the glass window on the side of the front door and saw the entire incident.  She saw Plaintiff seated in the driveway for approximately a minute and a half, talking in a calm tone of voice to the officers before he stood up.  She testified that Plaintiff stood up, pulled up his pants and then leaned over and spat in the planter beside him.  Without warning, Officer Mitre grabbed Plaintiff by the wrist and then by the throat with his other hand, spun him around, and then pinned him against the garage door.  Plaintiff agreed with this account and claimed that Mitre squeezed his throat hard enough to cut off his ability to breathe.

Officers Mitre and Madison both claimed that Plaintiff first tried to walk past Mitre toward the door of the house.  Mitre claimed that he ordered Plaintiff to sit and then grabbed his wrist when he continued to walk towards the door.  When Plaintiff pulled his wrist away, Mitre claimed that he grabbed him with two hands on the front of his shirt and pushed him against the garage door.  Madison claimed that Mitre initially grabbed Plaintiff by the wrist, spun him around, and put his hands on Plaintiff's chest area below the neck.

While Mitre was holding Plaintiff against the garage door, Madison approached and used his dart taser weapon on Plaintiff without any warning. While Vasquez was incapacitated by electricity, Plaintiff either fell unassisted (Mitre's testimony), or was forced head first by Officer Mitre (Plaintiff's testimony),  into the ground causing a significant cut above his eyebrow.  Ms. Jump saw Mitre in control of Plaintiff the entire time.  She also saw Mitre place himself on top of Plaintiff as they went to the ground together.   While he was still

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                           2

1   twitching from the taser's electricity, Mitre began handcuffing Vasquez.   The taser

2   darts were still in place in Vasquez' torso.  While Vasquez was still face down on

3   the ground, wedged against the garage door with Mitre on top of him and with at

4   least one of his hands secured in a handcuff, Madison decided to apply a second

5   five second electrical shock cycle to Vasquez with the taser.

6        Ms. Jump testified that the first taser application occurred after Plaintiff was

7   forced to the ground and the second application occurred after Plaintiff had been

8   handcuffed.  Madison testified that he tased Plaintiff a second time because

9   Plaintiff was refusing to put his arms behind his back.

10        Plaintiff was unarmed and physically outmatched by the officers.  There

11  were no threatening movements and there was no attempt to flee.  Vasquez had

12  been calm and cooperative.

13        An audiotape recorded at the scene included the second taser application.

14  After officer Madison used the taser, the audiotape showed he bragged about his

15  conduct and talked about pictures: "somethin' to show the kids when I get home.

16  . . . Look what daddy did.  Hey, I beat the . . . ." Declaration of Brian A. Vogel in

17  Support of Motion for Attorney's Fees and Expenses [Vogel Decl.], Exh. F (trial

18  Exhibit 102), at 11.

19        Plaintiff sought to prove that his Fourth Amendment rights had been

20  violated and that the officers had used unreasonable force against him when they

21  responded to the domestic dispute call.

22        The complaint asked for damages according to proof.  At trial Plaintiff did

23  not put in evidence of medical expenses because they had been paid by a third

24  party.   He did not claim any sort of severe injuries, only tight handcuffs, bruising,

25  a gash over his eye, and marks left by the taser darts.  He claimed humiliation.

26  Most importantly he claimed it was the principle of what occurred that mattered:

27  "it's most important that you return a verdict for the plaintiff to speak up to the

28

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                     3

principle." Vogel Decl., Exh. G, Transcript of Proceedings of July 1, 2010, at 126-127.  Plaintiff's counsel concluded by saying, "What happened to Max Vasquez is not okay.  We're not asking for a huge amount of money here, but we're asking you to tell them that it's not okay.  And justice in this case demands a verdict for the plaintiff." Id. at 128. Plaintiff's counsel asked the jury to determine the amount that would fairly compensate Plaintiff for any injury caused by either defendant.

After the instructions had been given to the jury and the parties finished their closing arguments, Plaintiff agreed to drop his claims against the City of Santa Paula and his claim for punitive damages in return for a stipulation from the defendant City that it would pay any compensatory damages awarded and pay attorney's fees.

During its deliberations, the jury sent a note to the Court asking about the actual amount of the legal and medical fees incurred by the Plaintiff.  The Court instructed that there were no medical expenses incurred and that the jury was not to award damages for medical expenses.  The Court further instructed that the jury was not allowed to consider attorneys' fees in the calculation of damages.

On the fourth day of trial, the jury returned a verdict in favor of defendant officer Mitre, but also in favor of Plaintiff Max Vasquez against defendant officer Madison.   The jury awarded nominal damages of one dollar against defendant Madison.

The most likely reconciliation of the verdict is that the jury found defendant officer Mitre did not use unreasonable force against Plaintiff, but that the tasering by officer Madison against Plaintiff after he was subdued and under the control of the officers was unnecessary and excessive.  Because Plaintiff was seized and restrained, and likely suffered most injuries before the second use of the taser, there were no appreciable injuries that were separate from the initial restraint.  Accordingly, the jury found defendant officer Madison used excessive force,

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    4

1  violating Plaintiff's Fourth Amendment rights, but that the actual injury

2  attributable to the second use of the taser was minimal.

3      Judgment was entered accordingly.  Neither party filed a post-trial motion.

4      B.    Plaintiff is the Prevailing Party

5      Plaintiff Max Vasquez is the prevailing party and entitled to reasonable

6  attorney's fees and expenses pursuant to 42 U.S.C. § 1988(b).  Plaintiff has

7  prevailed in this action for the purpose of an award of attorneys' fees: he obtained

8  an enforceable judgment in his favor that included an award of damages.  See

9  Farrar v. Hobby, 506 U.S. 103, 111 (1992) (plaintiffs in a 42 U.S.C. § 1983 action

10  prevailed because they obtained a judgment vindicating their rights despite an

11  award of nominal damages); see also Hashimoto v. Dalton, 118 F.3d 671, 677 (9th

12  Cir.), cert. denied, 523 U.S. 1122 (1998) (it is unnecessary to prevail on every

13  issue or claim to be considered the prevailing party for purposes of a fee award).

14      The Supreme Court has held that a court should award a prevailing plaintiff

15  attorney's fees "unless special circumstances would render such an award unjust."

16  Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (internal quotation marks and

17  citations omitted).   "Therefore, 'a court's discretion to deny fees under § 1988 is

18  very narrow and ... fee awards should be the rule rather than the exception.'"

19  Mendez v. County of San Bernardino, 540 F.3d 1109, 1126 (9th Cir. 2008)

20  (ellipsis in original, citation omitted).

21      C.    Plaintiff is Entitled to a Fee Award

22      1.    Ninth Circuit Precedent Requires An Award of Attorney's Fees

23      In this case, plaintiff prevailed at trial against one of two police officers and

24  obtained a one dollar verdict.  But his entitlement to attorney's fees is not limited

25  by this result.

26      Farrar v. Hobby, 506 U.S. 103 (1992) holds that in some situations a

27  nominal damages award precludes full compensation for the time spent by the

28  prevailing plaintiff's attorney.  However, "Farrar's holding is limited to cases in

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                                    5

1    which the plaintiff seeks substantial monetary damages but obtains only a nominal

2    award."  Stivers v. Pierce, 71 F.3d 732, 753 (9th Cir. 1995).

3         The plaintiff in the Farrar case demanded "17 million dollars from six

4    defendants.  After 10 years of litigation and two trips to the Court of Appeals, he

5    got one dollar from one defendant."  506 U.S. at 116 (O'Connor, J., concurring).[2]

6    Comparatively, the plaintiff in Farrar achieved a de minimis result because of the

7    difference between the judgment recovered and the amount sought by the plaintiff.

8    Id. at 120.  "He asked for a bundle and got a pittance."  Id.

9         As the Ninth Circuit recognized as early as 1994, "Nothing in Farrar,

10   however, suggests that district courts may never award fees to a party who

11   recovers only nominal damages."  Wilcox v. City of Reno, 42 F.3d 550, 554 (9th

12   Cir. 1994).  "If a district court chooses to award fees after a judgment for only

13   nominal damages, it must point to some way in which the litigation succeeded in

14   addition to obtaining a judgment for nominal damages."  Id. (emphasis in original).

15        In Mahach-Watkins v. Depee, 593 F.3d 1054, 1059 (9th Cir. 2010) the

16   Court of Appeals set out a three factor test for determining whether a plaintiff

17   succeeded beyond the nominal damages award.   First, the court should consider

18   the amount sought against the amount recovered.  Second, the court should

19   consider the significance of the legal issue on which plaintiff claims to have

20   prevailed.   Third, the court should consider whether the plaintiff accomplished a

21   public goal.

22        In Guy v. City of San Diego, 608 F.3d 582, 588-590 (9th Cir. 2010), the

23   Court of Appeals reversed an order denying attorneys fees in an excessive force

24   nominal damages case.  Without expressly applying a Mahach-Watkins analysis,

25   the court looked at the nature of the use of excessive force leading to liability.  It

26   concluded that a fee award "sends an unmistakable message to the City and its

27   _____

28        [2]  Justice O'Connor was the fifth vote in the Farrar majority.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                        6

1  police department that even when police officers reasonably must take forceful

2  actions in response to an incident, and even when such forceful actions are

3  permissible at first, if the officers go too far by unnecessarily inflicting force and

4  pain after a person is subdued, then the force, unnecessary in part of the action,

5  can still be considered excessive." Id. at 589.  The Court found this was

6  especially significant because the police department earlier concluded the

7  defendant found liable by the jury had not used excessive force.  Id.

8       Guy squarely requires a fee award in this case.  Guy had been in a bar fight

9  and was then restrained and arrested by several police officers.  An officer Maley

10  pinned Guy to the ground, then handcuffed him, and led him to a patrol car.

11  Maley told Guy to "relax a little bit there, tough guy." Id. at 584.  Maley then

12  performed a control maneuver during which Guy was thrown to the ground.  Id.

13  Maley then applied pepper spray at least twice.  Id.

14       In Guy, as in this case, the plaintiff sued several officers involved in the

15  incident and he sued the City.  Id. at 585, 588.  He prevailed only against one of

16  the officers, Maley. The Court of Appeals reconciled the the nominal damages

17  verdict with the actual injuries Guy contended he had suffered by noting that the

18  injuries likely were caused by actions that did not amount to excessive force.  Id.

19  at 588.  But the finding of liability showed that the jury found some use of

20  excessive force.  Id.

21       The Court of Appeals held that it was an abuse of discretion to deny fees, in

22  part, because the Police Department had concluded Maley did not use excessive

23  force.  Id. at 589.  It expressly rejected a requirement the plaintiff prove a change

24  of policy or internal investigation procedures because of the verdict.  Id. at 590.

25  Instead, "[t]he jury verdict that some of Maley's force was excessive offers clear

26  and important guidance to the police department, which is a sufficiently tangible

27  result." Id.

28

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    7

> The SDPD now knows, if it did not know before when it conducted its internal review, that even if Maley's force was initially justified, if it went too far, i.e., if he harmed Guy unnecessarily or gratuitously after Guy had been subdued, then a jury may determine that force was excessive.

Id. See also, Mahach-Watkins, 593 F.3d at 1062 ("We are unwilling to conclude that no public goal was served by Mahach-Watkin's § 1983 verdict merely because the CHP disagreed with the jury's conclusion that its officer used excessive force in violation of the Fourth Amendment, and because the CHP has refused either to discipline the officer or to change its policies.").

Mahach-Watkins compels the same result. Applying the first factor identified by the Court of Appeals, the amount of damages recovered and the amount sought favors an award of fees. Mahach-Watkins, 593 F.3d at 1060. Unlike Farrar, where the plaintiff sought 17 million dollars and got one dollar, Max Vasquez only sought damages according to proof and at closing argument his counsel did not ask for any specific amount. Counsel explicitly said plaintiff was not asking for a huge amount of money and that it was the principle that really mattered. Plaintiff did not seek medical expenses because they were paid by the City.[3] He did not ask for punitive damages. Plaintiff did not ask for much. Certainly, the difference between the amount sought and the amount obtained does not preclude an award of fees. Id. at 1061.

Applying the second Mahach-Watkins factor, the significance of the legal issue strongly favors an award of fees. Id. Plaintiff prevailed on his claim of excessive force. Although Mahach-Watkins held that the use of deadly force qualifies for fees, the opinion in Guy holds that any use of unnecessary and excessive force weighs in favor of a fee award. The use of force in this case is somewhere in between deadly force and a more common excess of non-deadly

---

[3] Because medical expenses were paid by a third party they were not a collateral source and likely would not have been relevant to the amount of damages. McLean v. Runyon, 222 F.3d 1150, 1156 (9th Cir. 2000).

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    8

1  force.  However, as the Supreme Court recently recognized, "Injury and force,

2  however, are only imperfectly correlated, and it is the latter that ultimately

3  counts."  Cf. Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) ("An inmate who is

4  gratuitously beaten by guards does not lose his ability to pursue an excessive force

5  claim merely because he has the good fortune to escape without serious injury.").

6       The use of a taser, as in this case, is significant.  Its use constitutes an

7  intermediate, significant level of force that must be justified by "'a strong

8  government interest [that] compels the employment of such force.'"  Bryan v.

9  MacPherson, 608 F.3d 614, 622 (2010) (citation omitted).   Given the fact that

10  tasers are used from a distance, and they are not ordinarily lethal if used correctly,

11  a trigger-happy officer can easily misuse the taser, thinking it will not be lethal but

12  also will not require physical combat.   Under these circumstances, as the facts of

13  defendant officer Madison's use of the taser in this case demonstrated, judicial

14  restraint on excessive use of the taser is significant, strongly favoring an award of

15  attorney's fees.

16       Applying the third Mahach-Watkins factor, the verdict accomplished a

17  public goal.  Id. at 1062.  It held officer Madison accountable after his police chief

18  and the police lieutenant assigned to review the incident refused to do so.   See

19  Vogel Decl., ¶ 35, Exhs. D and E.[4]   The verdict therefore held officer Madison to

20  account under the Fourth Amendment when his superiors refused to do so.

21

22  _____

23       [4]  At his deposition Chief MacKinnon testified that he could not recall any
    instance where an officer's information about the use of force conflicted with

24  other information within the Department.  He could not recall a single instance
    during his tenure that an officer had been disciplined.   Id. at 22-23.   Chief

25  MacKinnon reviewed the use of force report in connection with this incident.  Id at

26  24-26.  Lt. Saviers also reviewed the use of force and submitted a memorandum to
    Chief MacKinnon.  Lt. Saviers concluded that officer Madison acted within policy

27  when he deployed his Taser towards plaintiff Vasquez.  Vogel Decl., Exhs D and

28  E.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    9

1   Additionally, like the verdict in <u>Mahach-Watkins</u> the verdict has the effect of

2   acting as a deterrent against future unconstitutional conduct that might well result

3   in greater injuries and damage in a future incident.  <u>Id</u>. at 1062-1063.  This factor

4   therefore strongly favors an award of attorney's fees.

5       The Ninth Circuit opinions in <u>Wilcox</u>, <u>Mahach-Watkins</u>, and <u>Guy</u> all

6   support the award of attorney's fees in this case.  <u>Mahach-Watkins</u> and <u>Guy</u>

7   require an award.

8           2.      <u>Defendant Waived the Right to Object to Attorney's Fees</u>

9       There is an alternative basis supporting plaintiff's entitlement to attorney's

10  fees in this case.   After the case was submitted to the jury, the defendant City of

11  Santa Paula stipulated it would pay compensatory damages and attorney's fees.

12      After the jury was instructed and counsel finished closing arguments, the

13  court inquired about the plaintiff's intentions with regard to his <u>Monell</u> claim.

14  Vogel Decl., Exh. G, Transcript of July 1, 2010, at 161-162.  Counsel stated that

15  the parties had reached a stipulation to avoid the <u>Monell</u> claim and a punitive

16  damages phase.   Mr. Wisotsky (attorney for defendants) recited the stipulation:

17          That means, your honor, that the defendant – the Defendant City
            through its joint powers of authority will stipulate that any
18          compensatory damage award will be paid by the City through its joint
            powers authority, notwithstanding the fact that there is no legal
19          obligation for them to do so on a civil rights violation.  There is no
            state law recovery here, no respondeat superior or vicarious liability,
20          but in exchange for the waiver by the plaintiff of a <u>Monell</u> claim and
            a punitive damage claim, we will so enter into that stipulation with
21          the caveat that we are not relinquishing any rights of appeal if it so
            merits pursuing that.
22
23  <u>Id</u>. at 162.  The Court restated the stipulation and defense counsel said, "that is

24  absolutely correct."  <u>Id</u>. at 163-164.  Plaintiff's counsel then discussed the

    stipulation with the plaintiff.
25
    After a short break, defense counsel stated:
26
27          Your honor, I slightly mispoke because I didn't include an element.  I
            referenced compensatory damages only, but it was discussed and
            intended to include any attorney fee award.
28

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                          10

1  Id. at 164.  Defense counsel confirmed he had authority and then plaintiff

2  personally agreed to the stipulation on the record.  Id. at 165.

3        Plaintiff, therefore, gave up any claims for Monell liability and punitive

4  damages in return for a promise from defendants.

5        However, at least one part of the stipulation was illusory and meaningless.

6  Defense counsel claimed the City had no obligation to pay in a civil rights case.

7  This is not a correct statement of the law.  A public entity employer must

8  indemnify its employee in a civil rights case brought under 42 U.S.C. § 1983.

9  This has been established since the 1970's.  "California public employees are

10 entitled to indemnification for compensatory damages judgments against them in

11 federal civil rights actions."  Molina v. Richardson, 578 F.2d 846, 853 (9th Cir.

12 1978) (citing Williams v. Horvath, 16 Cal.3d 834 (1976)).[5]  Indemnification

13 includes judgments for attorney's fees.  Stanford Daily v. Zurcher, 366 F.Supp. 18,

14 25 (N.D. Cal. 1973), rev'd on other grounds, 436 U.S. 547 (1978).

15       Defendants could not promise something that the law already required.  See

16 Rest.2d, Contracts §73, Comment b (the performance of legal duty is not

17 consideration for a promise); Pacific Rys. Advertising Co. v. Carr,  29 Cal.App.

18 722, 724 (1916) ("A promise to perform a legal obligation is not a sufficient

19

20
21      [5]  Cal. Gov. Code § 825 provides in part:

22      "(a) Except as otherwise provided in this section, if an employee or
23      former employee of a public entity requests the public entity to
        defend him or her against any claim or action against him or her for
24      an injury arising out of an act or omission occurring within the scope
        of his or her employment as an employee of the public entity and the
25      request is made in writing not less than 10 days before the day of
26      trial, and the employee or former employee reasonably cooperates in
        good faith in the defense of the claim or action, the public entity shall
27      pay any judgment based thereon or any compromise or settlement of
28      the claim or action to which the public entity has agreed."

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    11

1  consideration for a contract based thereon.").

2      Since the City was already obligated to indemnify any judgment, the

3  question is what did Plaintiff receive in return for giving up his <u>Monell</u> and

4  punitive damages claims.   With respect to the <u>Monell</u> claim, he did not give up

5  much; he gave up the opportunity for double recovery.   But giving up the punitive

6  damages phase of the trial is different and very significant.

7      This stipulation, therefore, like any other contractual agreement, must be

8  construed in a way that does not render it meaningless.   "The fundamental goal of

9  contractual interpretation is to give effect to the mutual intention of the parties."

10  <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,</u> 68 Cal.App.4th

11  445, 473 (1998) (citing Cal. Civ. Code, § 1636; <u>Bank of the West v. Superior</u>

12  <u>Court,</u> 2 Cal.4th 1254, 1264 (1992); <u>Parsons v. Bristol Development Co.,</u> 62

13  Cal.2d 861, 865 (1965)).

14      Since the defendants' side of the bargain could not have been the promise

15  solely to indemnify the two officers, the stipulation must be construed to mean

16  more.  The City agreed to pay, in the case of a plaintiff's verdict, compensatory

17  damages <u>and</u> attorneys' fees.  In terms of fees, the City must have agreed to pay

18  more than zero.  Otherwise, it was promising nothing and there was no

19  consideration in return for Plaintiff dismissing his punitive damages claim against

20  the officers.   Had Plaintiff pursued punitive damages and prevailed he would have

21  automatically been entitled to his attorney's fees, despite the nominal damages

22  verdict for compensatory damages.  <u>Mendez  v. County of San Bernardino</u>, 540

23  F.3d 1109, 1126 (9th Cir. 2008).  Therefore, it is logical that the City decided to

24  spare the officers any risk of punitive damages in return for agreeing to pay

25  attorneys' fees more than zero.

26      The fact that the defendants expressly added to the stipulation the condition

27  that they reserved the right to appeal the merits implies there were no other

28  conditions affecting their obligation to pay.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    12

1    Defendant Madison therefore waived, in case the Plaintiff prevailed, any

2    right defendant may have had to object to an award of attorney's fees more than

3    zero.

4         D.    Plaintiff is Entitled to The Lodestar Fees

5         Reasonable attorneys' fees are determined by the "lodestar method."

6    Hensley, 461 U.S. at 433; Tahara v. Matson Terminals, Inc., 511 F.3d 950, 955

7    (9th Cir. 2007) ("Use of the 'lodestar method' to calculate attorney's fees under a

8    federal fee-shifting statute is proper.")  Under the lodestar method, "a district court

9    must start by determining how many hours were reasonably expended on the

10   litigation, and then multiply those hours by the prevailing local rate for an attorney

11   of the skill required to perform the litigation."  Moreno v. City of Sacramento, 534

12   F.3d 1106, 1111 (9th Cir. 2008); Tahara, 511 F.3d at 955.  There is a strong

13   presumption that the lodestar is a reasonable fee.  Perdue v. Kenny A. ex rel.

14   Winn, 130 S.Ct. 1662, 1673 (2010); Gates v. Deukmejian, 987 F.2d 1392, 1397

15   (9th Cir. 1992).

16        1.    Hours Reasonably Expended

17        Plaintiff's attorney seeks compensation for all hours reasonably expended

18   on the litigation which contributed to plaintiff's ultimate success.  See Democratic

19   Party of Washington State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004).  As

20   the prevailing party, plaintiff's counsel should be compensated for, among other

21   things, hours reasonably spent at all stages of litigation and general litigation

22   tasks.  Id.; Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1151 (9th Cir. 2001)

23   (even in the simplest case, just complying with the myriad requirements of the

24   Federal Rules of Civil Procedure can consume a surprising number of hours).  See

25   also Moreno, 534 F.3d at 1112 ("By and large, the court should defer to the

26   winning lawyer's professional judgment as to how much time was required to

27   spend on the case; after all, he won, and might not have, had he been more of a

28   slacker.").

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    13

1    Plaintiff had one attorney, Brian Vogel.  Defendants had two attorneys.

2    Brian Vogel spent 473.3 hours on the case from intake through trial.  Paralegal

3    services by five persons amounted to 152.3 hours.  See Vogel Decl., Exh. B.  As

4    the prevailing party, plaintiff may recover the cost of paralegal time.  Missouri v.

5    Jenkins, 491 U.S. 274, 285 (1989); see also Richlin Sec. Service Co. v. Chertoff,

6    553 U.S. 571 (2008) (prevailing party in Equal Access to Justice Act case may

7    recover its paralegal fees from the Government at prevailing market rates).

8    Most of the time spent by Brian Vogel and by the others was expended

9    preparing for trial and during trial, after the parties failed to resolve the case

10   during the March 4, 2010 settlement conference.

11   The case was litigated efficiently and effectively.  As the time sheet

12   demonstrates, all of the time was reasonable.

13       2.    Reasonable Hourly Rates

14   Reasonable fees are determined based on the prevailing market rates in the

15   relevant legal community.  Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662, 1672

16   (2010); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).  The "relevant

17   legal community" is "the forum district" in which a federal district court sits.

18   Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454-455 (9th Cir. 2010);

19   Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008).  In this

20   case, the forum district is the Central District of California.  The appropriate

21   market rates are the current rates at the time the fee award is set as opposed to the

22   historical rates prevailing at the time the case was litigated.  Bell v. Clackamas

23   County, 341 F.3d 858, 868 (9th Cir. 2003).

24   Plaintiff seeks $500 per hour for the services of Brian A. Vogel.  He is a

25   1993 graduate of Loyola Law School, a certified criminal law specialist, and a

26   former Ventura County senior deputy public defender.  See Vogel Decl., ¶¶ 2-5,

27   Exh. A.   When he worked as a public defender he obtained a substantial amount

28   of training and experience in investigation, preparation and presentation of

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    14

1   evidence, trial planning and tactics, and client relations.   He participated in

2   approximately 70-100 jury trials of which approximately half were felony trials.

3   This is considerably more trial experience than most commercial litigators

4   representing organizational clients.[6]

5          Plaintiff seeks $100 per hour for the paralegal time.

6          The rates sought are reasonable.  These rates are at or below prevailing

7   market rates for attorneys of comparable skill and experience in the Central

8   District of California.  See Declaration of Carol A. Sobel (plaintiff's attorneys'

9   respective rates are at or below current billing rates of comparable lawyers from

10  private firms as well as public interest groups and the rates set forth in recent fee

11  awards in the Central District of California) (citing and including as exhibits the

12  orders awarding fees in Jones v. City of Los Angeles, CV 03-1142-R (C.D. Cal.

13  Dec. 8, 2008) (approving $725/hour for 1974 law graduate, $695/hour for 1978

14  law graduate, $490/hour and $480/hour for 1994 law graduates, and $175/hour for

15  a paralegal); Fitzgerald v. City of Los Angeles, CV 03-01876 DDP, 2009 WL

16  960825, *11 (C.D. Cal. April 7, 2009) (approving $740/hour for 1974 law

17  graduate, $710/hour for 1978 law graduate, $525/hour for 1994 law graduate,

18  _____

19     [6] See Schwartz Decl., Exh. D, Refo, The Vanishing Trial, J. SEC. LITIG.
20  A.B.A., Winter 2004 at 4 (recognizing that the diminished number of cases that go
    to trial means fewer lawyers have meaningful trial experience: "When I started
21  practicing, it was expected that before an associate was considered for partner, she
22  have considerable trial experience and hopefully at least one trial as first chair.
    Now, firms routinely elect new litigation partners who have never even
23  second-chaired a trial.").  See also, Hadfield, 2005 Stanford Law Review
24  Symposium: the Civil Trial: Adaptation and Alternatives, Exploring Economic
    and Democratic Theories of Civil Litigation Differences Between Individual and
25  Organizational Litigants in the Disposition of Federal Civil Cases, 57  STAN. L.
26  REV. 1275, 1314 (2005) (Analyzing Federal Judicial Center data, "individual
    plaintiffs are substantially more likely to have their cases decided in a trial than
27  organizational plaintiffs."
28

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    15

1   $350/hour for a 2003 law graduate, and $175/hour for a paralegal); <u>Multi-Ethnic</u>

2   <u>Immigrant Workers Organizing Network v. City of Los Angeles</u>, CV 07-3072

3   AHM (C.D. Cal. Jun. 24, 2009) (approving $800/hour for a 1969 law graduate,

4   $750/hour for 1976 law graduate, $710/hour for 1978 law graduate, and $490/hour

5   for 1994 law graduate); <u>Atkins v. Miller</u>, CV 01-01574 DDP (C.D. Aug. 27, 2007)

6   (finding $675/hour for a 1975 law graduate was at the high end of the market

7   spectrum for 2007, but approving the rate nonetheless); and <u>Lauderdale, et al. v.</u>

8   <u>City of Long Beach</u>, CV 09-979 ABC (C.D. Cal. Jan. 11, 2010) (approving

9   $550/hour for 1992 law graduate and $400/hour for 2004 law graduate)).  <u>See also</u>

10  <u>Westerlund v. Landmark Aviation</u>, Case No. CV09-0686 GW (PLAx), 2010 WL

11  3171044, * 5 (C.D.Cal. Aug. 9, 2010) (approving arbitration award of lodestar

12  based on 2009 hourly rate of $595 for attorneys admitted to the bar in 1992 and

13  1994).

14        Rates awarded in bankruptcy litigation are another useful barometer of

15  market rates for non-bankruptcy litigators.  Pursuant to 11 U.S.C. § 330(a)(3)(F),

16  bankruptcy courts must ensure that they award fees in bankruptcy matters at

17  hourly rates that are comparable to the "customary compensation charged by

18  comparably skilled practitioners" in non-bankruptcy cases.  <u>Id</u>.; <u>see</u> <u>In re</u>

19  <u>Yermakov</u>, 718 F.2d 1465, 1471 (9th Cir. 1983) ("the hourly rate [in a bankruptcy

20  case] must be based on the rate that would be charged for comparable services in a

21  non-bankruptcy case").

22        The rates sought are at or below rates awarded in 2010 to experienced

23  litigators by the United States Bankruptcy Court for the Central District of

24  California.  See Req. for Jud. Not., Exhs. 1, 2 (March 9, 2010 order granting

25  interim fee application submitted in <u>In re Fremont General Corporation</u>, Case No.

26  8:08-bk-13421-ES (Bankr. C.D. Cal.) and approving hourly rates for Los Angeles-

27  based attorneys with Klee, Tuchin, Bogdanoff & Stern LLP listed in application as

28  $925 for a 1974 law graduate, $850 for a 1985 law graduate, $675 for a 1992 law

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    16

1   graduate, $650 for a 1996 law graduate, $575 for a 1999 law graduate, $495 for a

2   2003 law graduate, $430 for a 2005 law graduate, and $215 for a paralegal); Req.

3   for Jud. Not., Exhs. 1, 3 (order in same proceeding granting fee application and

4   approving hourly rates for Los Angeles-based attorneys with Stutman, Treister &

5   Glatt, P.C. listed in application as $755 for a 1966 law graduate, $695 for a 1977

6   law graduate, $525 for a 1993 law graduate (of counsel), $550 for a 1996 law

7   graduate, $375 for a 2005 law graduate, and $240 for paralegals). See also Req.

8   for Jud. Not., Exhs. 4, 5 (April 21, 2010 order in In re Fremont General

9   Corporation, Case No. 8:08-bk-13421-ES (Bankr. C.D. Cal.) granting fee interim

10  application from Washington, D.C.-based attorneys with Patton Boggs, LLP

11  charging $830/hour for a 1983 law graduate, $750/hour for a 1981 and a 1987 law

12  graduate, $575/hour for 1997 law graduate, $425/hour for a 2003 law graduate,

13  $265-$170/hour for paralegals, and Texas-based attorneys charging $700/hour for

14  1977 law graduate and $550/hour for 1999 law graduate).

15        3.   The Lodestar Amount Should Not Be Diminished Due
             to the Amount of Damages Awarded in this Case

16  The lodestar amount should not be reduced in this case simply because the

17  amount of fees sought exceeds the nominal damages award.  Here, Plaintiff

18  achieved monetary and nonmonetary success.  The verdict  "'constitute[d] a

19  warning to law enforcement officers not to treat civilians unconstitutionally.'"

20  Morales v. City of San Rafael, 96 F.3d 359, 365 (9th Cir. 1996).

21        Most importantly, the time spent can not be parceled out between the

22  various defendants originally named in the complaint and the one defendant

23  officer against whom Plaintiff prevailed.[7]   The time spent was inextricably

24

25  _____

26     [7]  The Complaint had two claims for relief.  The first was against officers Mitre,
    Madison, and Smith for use of excessive force.  The second was against Chief
27  MacKinnon and the City for failure to train, supervise and investigate (the Monell
28                                                                    (continued...)

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    17

1  intertwined inasmuch as the defendant police officers were all present at the time

2  of the incident and would have been subject to discovery, including depositions as

3  percipient witnesses, even if they had not been named as defendants.

4  Additionally, very little time was actually spent on the <u>Monell</u> claim.  Vogel Decl.,

5  ¶¶ 24, 25.  Plaintiff would have had to take discovery of City policies and

6  practices to obtain evidence relevant to the excessive force claim regardless

7  whether the City had been a defendant or not.

8          Furthermore, Plaintiff dismissed defendants officer Ryan Smith, Chief

9  Stephen MacKinnon, and the City of Santa Paula voluntarily before trial.   On the

10  whole, Plaintiff sought relief for a single incident involving excessive force lasting

11  only a few minutes.  "A reduced fee award is appropriate if the relief, however

12  significant, is limited in comparison to the scope of the litigation as a whole."

13  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 440 (1983).   Here, the relief is not limited in

14  comparison to the scope of the litigation.

15           Plaintiff did not bring multiple claims that were easily divisible.  He did not

16  seek relief for segments of the incident, such as the initial restraint, the initial use

17  or force, the transport after arrest, or for lack of medical care.  He simply claimed

18  unreasonable force was used against him when he was restrained.  He contended

19  that excessive force was used against him when City of Santa Paula police officers

20  responded to April Clanton's report of a domestic dispute.  His attorney's work on

21  the case was inextricably intertwined among the several initial defendants and

22  later among the two police officer defendants, Mitre and Madison, who remained

23  at the time of trial.

24          "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney

25  to undertake the representation of a meritorious civil rights case."  <u>Perdue</u>, 30

26

27  _____

      [7](...continued)
28  claim).  Dkt. 1.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                        18

1   S.Ct. at 1672.  We submit that a reduction from the lodestar, under the

2   circumstances of this case, would not be consistent with § 42 U.S.C. § 1988(b)

3   because the reduction would discourage attorneys from undertaking representation

4   of clients in marginal, but meritorious, cases requiring substantial trial skills.[8]

5   "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this

6   objective."  Perdue, at 1672.

7         E.    Post-Judgment Interest on Fees

8         Plaintiff is also entitled to post-judgment interest on the amount of his

9   attorneys' fees and expenses pursuant to 28 U.S.C. § 1961(a).  Friend v.

10  Kolodzieczak, 72 F.3d 1386 (9th Cir. 1995) (internal citation omitted), cert.

11  denied, 516 U.S. 146 (1996).  "Interest runs from the date that entitlement to fees

12  is secured, rather than from the date that the exact quantity of fees is set."  Id.

13        Judgment was entered in this case on July 26, 2010.  (Dkt. 139.)

14  Accordingly, interest on the award of fees and expenses runs from July 26, 2010.

15        F.    Fees and Expenses for Fee Motion

16        Time spent seeking an award of fees and expenses is also compensable.

17  Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 981 (9th Cir. 2008) (time

18  spent establishing entitlement to and amount of fees is compensable and fee-on-

19  _____

20        [8] "Lawyers must eat, so they generally won't take cases without a reasonable
    prospect of getting paid. Congress thus recognized that private enforcement of
21  civil rights legislation relies on the availability of fee awards: 'If private citizens
    are to be able to assert their civil rights, and if those who violate the Nation['s]
22  fundamental laws are not to proceed with impunity, then citizens must have the
    opportunity to recover what it costs them to vindicate these rights in court.' S.Rep.
23  No. 94-1011, at 2 (1976), as reprinted in 1976 U.S.C.C.A.N. 5908, 5910.  At the
    same time, fee awards are not negotiated at arm's length, so there is a risk of
24  overcompensation.  A district court thus awards only the fee that it deems
25  reasonable.  See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76
    L.Ed.2d 40 (1983).  The client is free to make up any difference, but few do. As a
26  practical matter, what the district court awards is what the lawyer gets."  Moreno
27  v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).
28

Plaintiff's Memorandum in Support of
Motion For Attorney's Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    19

1   fees must be calculated using the lodestar method); Bernardi v. Yeutter, 951 F.2d

2   971, 976 (9th Cir. 1991) (awarding fees for fee petition to outside counsel); see

3   also Clark v. City of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986).

4        Through July 1, 2010, special fee counsel have spent the following number

5   of hours on this motion: Amitai Schwartz, 43.7 hours, and Moira Duvernay, 9.0

6   hours.  Additional Ms. Duvernay performed 5.1 hours of paralegal work.

7   Declaration of Amitai Schwartz ("Amitai Schwartz Decl."), ¶ 10, Exh C.  This

8   time is reasonable inasmuch as fee counsel had to analyze and cogently present the

9   factual and procedural background of the case, meet and confer with opposing

10  counsel, gather, review and present time records, review applicable legal

11  authorities, contact declarants, draft declarations, update research on hourly rates,

12  and draft the moving papers.  Id. at ¶ 8.   Like any other extensive motion,

13  presenting a motion for attorney's fees takes considerable time and effort,

14  especially if it covers the legal issues and effectively presents necessary data in an

15  easily understandable form.  This case was somewhat more complex due to the

16  entitlement issues.

17       Amitai Schwartz is a 1972 law school graduate of Boalt Hall at the

18  University of California, Berkeley.  Amitai Schwartz Decl., ¶ 2 & Exh. A.  He has

19  extensive experience litigating civil rights and other public law matters in federal

20  and state court.  Id. at ¶¶ 2, 3.  He has particular experience in recovery of

21  attorneys' fees.  Id. at ¶¶ 4,5.  Plaintiff seeks $650.00 per hour for his time.  Moira

22  Duvernay is a 2004 graduate of University of California Hastings College of the

23  Law.  Id. at ¶ 6 & Exh. B.  She has six years experience litigating public interest

24  cases in federal court.  Id.  Plaintiffs seek $300.00 per hour for her time.  Plaintiff

25  seeks $100.00 for paralegal time.  These rates are at or below prevailing market

26  rates.  See Section D, Subsection 2, supra.

27

28

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    20

G.   Plaintiff's Attorney's Expenses

As the prevailing party, plaintiff is entitled to expenses.  See United Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (reasonable attorneys' fee also includes reimbursement for out-of-pocket costs).

Plaintiff's attorney seeks compensation for litigation expenses on the merits of this case in the amount of $7,757.67.  This amount is in addition to, and does not include, the amount previously included in plaintiff's Bill of Costs.[9] Summaries of the expenses claimed are attached to the Declaration of Brian Vogel, Exh. C.

H.   Summary of Fees and Expenses Sought

Merits Work

| | | | |
|---|---|---|---|
| Brian A. Vogel: | 473.3 hours x $500.00/hour | = | 236,650.00 |
| Paralegal Services 152.3 hours x $100.00/hour | | = | 15,230.00 |
| The Lodestar Amount: | | | 251,880.00 |
| Plaintiff's Attorneys' Expenses: | | + | 7,757.67 |
| **Total Sought by Plaintiff's Attorneys for Merits Work and Costs:** | | | **$ 259,637.67** |

Work to Date on Fee Motion

| | | |
|---|---|---|
| Amitai Schwartz: | 43.7 hours x $650.00/hour = | $ 28,405.00 |
| Moira Duvernay: | 9.0 hours x $300.00/hour = | 2,700.00 |
| Paralegal Services | 5.1 hours x $100.00/hour = | 510.00 |
| Total Fees for Fee Work to Date: | | 31,615.00 |
| Costs and Expenses for Fee Work to Date: | + | 0 |
| **Total Fees and Expenses for Fee Work to Date:** | | **$ 31,615.00** |

---

[9]  Plaintiff's Bill of Costs and the Objections to it were settled by the parties. Plaintiff has not included as expenses with this motion any part of the Bill of Costs that he compromised as part of the settlement with defendant.

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    21

I.     Conclusion

Plaintiff intends to supplement the amount of fees and expenses requested here with the additional time spent in the preparation of his reply papers.

Plaintiff respectfully requests that the Court award attorneys' fees and expenses, plus post-judgment interest, in accordance with the total amount to be set forth in the Reply Memorandum to be filed in support of this motion.

Dated: September 8, 2010

Respectfully submitted,

Amitai Schwartz
Moira Duvernay

By:     /s/ Amitai Schwartz
        Amitai Schwartz
        Counsel for Plaintiff

Plaintiff's Memorandum in Support of
Motion For Attorney's  Fees and Expenses
Case No. CV 09-2509 DSF (MAN)                    22