# EXHIBIT D

*102XSB*

*Send to:  SOBEL, CAROL*
*          LOYOLA LAW SCHOOL - LOS ANGELES*
*          919 SOUTH ALBANY ST*
*          LOS ANGELES, CA 90015-1210*

*Time of Request: Thursday, May 27, 2010  16:50:40 EST*
*Client ID/Project Name:*
*Number of Lines: 629*
*Job Number:       2841:223604099*

*Research Information*

*Service:   Terms and Connectors Search*
*Print Request: Current Document: 14*
*Source: CA Federal & State Cases, Combined*
*Search Terms: attorney w/10 fees w/30 lodestar and date(geq (1/1/2009) and leq*
*(5/26/2009))*

2009 U.S. Dist. LEXIS 34803, *



14 of 66 DOCUMENTS

**DONALD FITZGERALD, DELBERT EUGENE HUDSON, DILWORTH MENEFELE and MARIO YOUNGBLOOD, as individual plaintiffs and as representatives of the classes, Plaintiffs, v. CITY OF LOS ANGELES, CHIEF OF POLICE WILLIAM BRATTON and CAPTAIN CHARLIE BECK, in their individual and official capacities, and DOES 1-10, in their individual and official capacities, Defendants.**

**Case No. CV 03-01876 DDP (RZx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2009 U.S. Dist. LEXIS 34803*

**April 7, 2009, Decided**
**April 7, 2009, Filed**

**PRIOR HISTORY:** *Fitzgerald v. City of Los Angeles, 485 F. Supp. 2d 1137, 2007 U.S. Dist. LEXIS 30915 (C.D. Cal., 2007)*

**COUNSEL:** [*1] For Donald Fitzgerald, Plaintiff: Carol A Sobel, LEAD ATTORNEY, Carol A Sobel Law Offices, Santa Monica, CA; Mark D Rosenbaum, Peter Bibring, Peter J Eliasberg, LEAD ATTORNEYS, ACLU Foundation of Southern California, Los Angeles, CA.

For Delbert Eugene Hudson, as individual plaintiffs and as representatives of the classes, Dilworth Menefee, as individual plaintiffs and as representatives of the classes, Mario Youngblood, as individual plaintiffs and as representatives of the classes, Plaintiffs: Carol A Sobel, Yvonne Tania Simon, LEAD ATTORNEYS, Carol A Sobel Law Offices, Santa Monica, CA; Mark D Rosenbaum, Peter Bibring, Peter J Eliasberg, LEAD ATTORNEYS, ACLU Foundation of Southern California, Los Angeles, CA; Negin Mirmirani, LEAD ATTORNEY, Loeb & Loeb, Los Angeles, CA.

For City of Los Angeles, Defendant: Bruce Monroe, LEAD ATTORNEY, Los Angeles City Attorney's Offfice, Police Employment Law Sec, Los Angeles, CA; Cory M Brente, Kelly N Kades, Wendy C Shapero, LEAD ATTORNEYS, Los Angeles City Attorney's Office, City Hall E - Police Litigation, Los Angeles, CA.

**JUDGES:** DEAN D. PREGERSON, United States District Judge.

**OPINION BY:** DEAN D. PREGERSON

**OPINION**

**ORDER GRANTING MOTION FOR ATTORNEYS' FEES**

[Motion filed on March [*2] 6, 2009]

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees. Plaintiffs seek attorneys' fees for time spent on their motion to extend the injunction issued in this case and for time spent between the extension of the injunction and the entry of the enforceable settlement agreement on February 17, 2009. Defendant City argues that Plaintiffs have waived any claim to attorneys' fees for this work, that Plaintiffs do not meet the standard for attorneys' fees, and that their fee requests are unreasonable. After reviewing the materials submitted by the parties and hearing oral argument, the Court grants Plaintiffs' motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, who are persons living in the area of Los Angeles commonly known as "Skid Row," filed their Complaint on March 10, 2003. Plaintiffs filed their suit pursuant to *42 U.S.C. § 1983*, alleging that a Los Angeles Police Department search and seizure policy violated the *Fourth Amendment* and seeking injunctive and declaratory relief. This case was assigned to the

Honorable Nora Manella. On March 31, 2003, the Court granted a temporary restraining order. The Court granted a preliminary injunction on April 14, [*3] 2003.

## A. The Settlement Agreement

On December 8, 2003, the Court approved a settlement between the parties. The Settlement Agreement stated the parties' "desire to resolve this matter without further litigation" and that they "therefore intend with this Settlement Agreement to resolve all issues pertaining to case number CV03-1876 upon the terms and conditions set forth in this Agreement." Def. Ex. 7 at P E. The Settlement Agreement provided for a stipulated three-year permanent injunction. Id. at §§ I-II. The permanent injunction enjoined the City of Los Angeles as follows: (1) officers were prohibited from conducting detentions or "Terry" stops without reasonable suspicion that the person is involved in criminal activity or has committed a crime or violated parole or probation, but were not prohibited from engaging in consensual encounters; (2) officers would not search the persons/possessions of those stopped on the public streets and sidewalks of the Skid Row area without probable cause or reasonable suspicion that the person has committed a crime or violated parole or probation, though officers were not prohibited from performing "pat-down" searches in accordance with law; and (3) [*4] officers would not search the residences of those on Skid Row except in certain circumstances. The Settlement Agreement provided that the plaintiffs could move for an extension of the injunction for a period of up to 36 months. Id. at § II.

The Settlement Agreement further provided for a payment to plaintiffs and attorneys fees and costs. Specifically, section IV of the Settlement Agreement, titled "Attorney's Fees and Costs" provided:

> Within 60 days after this Agreement is executed by all parties, Defendants City of Los Angeles will pay plaintiffs the amount of $ 75,000 and plaintiffs' attorneys fees and cost [sic] in the amount of $ 94,720. Plaintiffs accept this amount as full payment for any all monetary amounts owed in connection with Case Number CV03-1876, and, on behalf of themselves, hereby release all defendants, as well as all other employees and entities of the City of Los Angeles, from any further obligations to pay any further amounts.

Id. at § IV. Section V, titled "Release of Defendants," stated: "Except as provided for in this Agreement, plaintiffs hereby release Defendants . . . from any an all

obligations and liabilities in connection with the injunctive relief claims [*5] in case number CV03-1876 and the allegations made therein."

On the same day, Judge Manella also granted plaintiffs' application for attorneys' fees. Plaintiffs requested $ 94,720 in fees and costs, and presented documentation showing that this number reflected billable hours up to that point. See Order Granting Plaintiffs' Application for Attorneys' Fees, at 4-5 (Docket No. 42) (December 8, 2003). Overall, the Court granted $ 93,091 in attorneys' fees and $ 1,258.19 for costs, for a total of $ 94,393.19. Id. at 6.

## B. Extension of the Injunction

Plaintiffs filed a motion to extend the original injunction on December 8, 2006. The Court extended the injunction until it could decide the motion. On April 20, 2007, the Court granted the motion to extend the injunction for a period of four months (120 days) from the issuance of the order because "even viewing the evidence in the light most favorable to Defendants, they have admitted to an unconstitutional policy." See Order Granting Motion to Extend Injunction (Docket No. 64) (April 20, 2007) at 32-33. The Court posited that the four-month period "should provide the LAPD with ample time to review its policies and practices to ensure that they [*6] comply with current *Fourth Amendment* law." Id. at 32.

On July 11, 2007, Defendants filed a motion to vacate the injunction. This motion was noticed for hearing on August 6, 2007. Plaintiffs opposed the motion on the grounds that Defendants were still not abiding by the terms of the injunction and had not satisfied the legal standard for vacating it. On August 20, 2007, Plaintiffs filed a second motion to extend the injunction, alleging that Defendants were continuing to violate its terms. Prior to the hearing on the motion, the parties initiated settlement negotiations. These negotiations eventually resulted in the parties' reaching a settlement agreement, which the Court signed on February 17, 2009. See Docket Entry Nos. 113 (February 3, 2009) and 117 (February 17, 2009). The agreement provides that (1) searches incident to arrest are not permissible when a person is cited for an infraction or misdemeanor and released, (2) that the police may not compel persons to answer whether they are on probation or parole, and (3) that the time for a warrant check may not exceed the time reasonably required for an officer to complete his or her other duties. Settlement and Order (Docket Entry [*7] No. 117), at PP 6, 13, 17. [1] The February 17, 2009 Settlement and Order noted the parties' disagreement over the issue of attorneys' fees. Id. at P 21.

1   On February 17, 2009, the Court also granted Plaintiffs' request to substitute an attorney, filed

on February 3, 2009. In particular, Plaintiffs sought to substitute the ACLU of Southern California and the Law Offices of Carol Sobel as attorneys of record for plaintiffs in place of Hadsell Stormer Keeny Richardson & Renick LLP ("Hadsell Stormer"). Plaintiffs explained that one of Hadsell Stormer's associates, who did no work on this case, married one of the Court's law clerks in August 2008. Defendants did not oppose Plaintiff's request.

Plaintiffs are seeking attorneys' fees for Hadsell Stormer through this motion. Although the subject associate has not worked on this case, Hadsell Stormer is not seeking fees for any time after July 2008. Richardson Decl., P 23. The Court also notes that the subject law clerk, who started his term in September 2008, is not assigned this case. Additionally, the Court notes that it has an extern who formerly worked for Hadsell Stormer. That extern has assured the Court that she did not work on this case.

Plaintiffs [*8] filed this Motion on March 6, 2009. Plaintiffs seek attorneys' fees incurred (1) in litigating the motion to extend the injunction in 2006 and 2007 and (2) for time spent between the extension of the injunction and the entry of the enforceable settlement agreement on February 17, 2009.

## II. LEGAL STANDARD

Pursuant to *42 U.S.C. § 1988*, a district court in its discretion may award a reasonable attorney's fee to the prevailing party in *§ 1983* litigation. *42 U.S.C. § 1988(b)*. Under *§ 1988*, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)* (internal quotation marks omitted). A plaintiff "prevails" when there is a material alteration of the legal relationship between the parties that modifies the defendant's behavior in a way that directly benefits the plaintiff. See *Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)*. Settlement agreements enforced through consent decrees can form the basis of an attorneys' fee award. *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598, 603-04, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001); Maher v. Gagne, 448 U.S. 122, 129, 100 S. Ct. 2570, 65 L. Ed. 2d 653 (1980)*. Additionally, [*9] a district court has the discretion to award fees to a prevailing party in consent decree litigation for work reasonably spent to monitor and enforce compliance with the decree. *Keith v. Volpe, 833 F.2d 850, 855-57 (9th Cir. 1987)*; *N.A.A.C.P. v. San Francisco Unified Sch. Dist., 284 F.3d 1163, 1166 (9th Cir. 2002)* (citing Volpe and noting that this principle is "settled law" in the Ninth

Circuit). Attorneys' fees may be waived as part of the settlement process. *Evans v. Jeff D., 475 U.S. 717, 737-38, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986)*.

California law also provides a basis for attorneys' fees in some actions. [2] Pursuant to *California Code of Civil Procedure § 1021.5*, "a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest," where certain requirements are met. *Cal. Civ. Proc. Code § 1021.5*. Attorneys' fees will be appropriate if (a) a significant benefit has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement make the award appropriate, and (c) such fees are not paid out of the recovery. Id. Although the section "is phrased in permissive [*10] terms . . ., the discretion to deny fees to a party that meets its terms is quite limited," and generally requires a full fee award unless special circumstances would render such an award unjust. *Lyons v. Chinese Hospital Ass'n, 136 Cal. App. 4th 1331, 1344, 39 Cal. Rptr. 3d 550 (2006)*.

> 2   The Complaint in this matter also had a claim under *California Civil Code § 52.1*. "[W]hen state statutes authorize fee awards to litigants in a particular class of cases, the statutes are substantive for *Erie [v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)]* purposes if there is no 'direct collision' with the Federal Rules." *CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1111 (9th Cir. 2007)*; see *In re Larry's Apartment, L.L.C., 249 F.3d 832, 837-38 (9th Cir. 2001)*.

Where a plaintiff is entitled to attorneys' fees, a district court must determine the amount of a reasonable fee. The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley, 461 U.S. at 433*. The Court should exclude from the initial fee calculation hours that were not reasonably expended. *Id. at 434*. There is a strong presumption that the lodestar [*11] figure represents a reasonable fee. *Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987)*. After calculating the "lodestar," other considerations "may lead the district court to adjust the fee upward or downward." Id. Among those other considerations is "the important factor of the 'results obtained.'" Id.; see also id. at n.9 (suggesting that the factors identified in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)*, may be particularly helpful, but also noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate").

## III. DISCUSSION

Case 2:09-cv-02590-DSF -MAN   Document 156-4   Filed 09/08/10   Page 6 of 14   Page ID
#:1265

Page 4
2009 U.S. Dist. LEXIS 34803, *

Defendant City of Los Angeles ("City" or "Defendant") argues that Plaintiffs are not entitled to the fees they request. First, and primarily, Defendant argues that Plaintiffs are entitled to no fees because the 2003 Settlement Agreement waived any rights to attorneys' fees for work performed in the future. Second, in the alternative, Defendant attacks the fees Plaintiffs request and asks the Court to award less.

**A. Waiver**

As a threshold matter, Defendant argues that Plaintiffs waived their right to attorneys' fees through the December  [*12] 2003 Settlement Agreement. [3] As mentioned above, the general rule is that a prevailing party in a civil rights action - including one concluded through settlement - is entitled to attorneys' fees. Where parties in a civil rights action resolve the action by settlement, the availability of attorneys' fees for successful plaintiffs may be waived as part of the settlement process. *Evans v. Jeff D., 475 U.S. 717, 737-38, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986).* In the Ninth Circuit, however, a waiver of attorneys' fees must be clear: "a prevailing plaintiff may sue for reasonable attorneys' fees unless the defendant shows that the plaintiff clearly waived fees as part of the settlement." *Muckleshoot Tribe v. Puget Sound Power & Light Co., 875 F.2d 695, 697 (9th Cir. 1989)*; see *Wakefield v. Mathews, 852 F.2d 482 (9th Cir. 1988).* A defendant may demonstrate a waiver of attorneys' fees in two ways. The basic rule is that the court focuses on "the language in the settlement agreement." *Id. at 698.* "[A] waiver of attorneys' fees may be established by clear language in the release," either because it "contains an explicit reference to fees" or because "the breadth of the release is so 'sweeping' that it necessarily includes  [*13] attorneys' fees." *Id.* Alternatively, "if the language in the release is unclear or ambiguous, surrounding circumstances may clearly manifest the intent of the parties that attorneys' fees be waived." *Id.* Generally, "waiver of attorneys' fees should not be presumed from a silent record." *Wakefield, 852 F.2d at 484.* Ultimately, "any waiver or limitation of attorney fees in settlements of [civil rights] cases must be clear and unambiguous." *Holland v. Roeser, 37 F.3d 501, 503-04 (9th Cir. 1994).* [4]

3   City does not appear to distinguish between the extension of the injunction in April 2007 and the second settlement entered in February 2009. Rather, City refers to these efforts collectively.
4   In Wakefield, the Ninth Circuit held that the release at issue was so sweeping as to cover attorneys' fees, even though it did not provide those fees by name. That release provided that it applied to

any and all manner of action or

actions, causes or causes of action, in law or in equity, suit, debts, liens, contracts, agreements, promises, liabilities, claims, rights, obligations, demands, damages, including punitive damages, injuries, debts, losses, costs or expenses of any nature whatsoever, known or  [*14] unknown, fixed or contingent ..., which [plaintiffs] now [have] or may hereafter have against each or any of the [defendants] arising out of, or what might be considered to arise out of or in any way connected with the aforementioned lawsuit or the conduct of [defendants] to date.

*852 F.2d at 483.*

The Court begins with an analysis of whether the language in the agreement clearly waives attorneys' fees for work performed in connection with the extension of the injunction. The critical section is subsection IV. Titled "Attorney's Fees and Costs," the section provides the following payment: (1) a payment to plaintiffs in the amount of $ 75,000 and (2) attorneys' fees and costs in the amount of $ 94,720. The section then contains language releasing the defendant as follows: "Plaintiffs accept this amount as *full payment for any and all monetary amounts owed in connection with Case Number CV03-1876,* and . . . *release all defendants . . . from any further obligations to pay any further amounts.*" Def. Ex. 7 at § IV (emphasis added). The parties focus on different portions of this section. Plaintiffs emphasize the past-tense nature of the word "owed," and distinguish that language from the language  [*15] used in Wakefield, which more expressly contemplated sums for a future amount. Defendant argues that the section also contemplates future obligations, through its release of defendants from "any further obligations to pay any further amounts." Plaintiffs argue that the better way of reading the agreement is that "the scope of the release is . . . simply coextensive with the scope of the payment. In other words, in exchange for the payments of $ 75,000 and $ 94,720, Plaintiffs were only agreeing to release defendants from their obligations to pay any more for harms already suffered and attorneys work already performed." Reply at 1:24-28.

The Court agrees with Plaintiffs. Although the term "further" could take on the meaning Defendants suggest, it does not clearly do so. Section IV does *not* say, for example, that Plaintiffs accept the amount as full payment for all monetary amounts owed, now or in the future. See *Wakefield, 852 F.2d at 483* (waiving claims

which plaintiffs now have or may hereafter have against the defendants). The only indication that future liabilities or fees *might* be covered is the use of the word "further." In context, however, the use of that term is not clear. It [*16] could mean that the plaintiffs would not later claim they were owed something for which they were not compensated - either damages or attorneys' fees - in December 2003 (i.e., Defendants owe nothing further as of December 2003). Or it could mean that the amount was meant to cover all future work by the plaintiffs in, for example, extending and enforcing the injunction (i.e., Defendants will owe nothing for any further work performed on the case).

Other provisions in the Settlement Agreement do not clarify this issue. Defendant argues that additional language supports its reading. In particular, Defendant argues that other provisions show that the City of Los Angeles paid attorneys' fees in part as consideration for the waiver of additional attorneys' fees and costs in the event Plaintiffs sought to extend the injunction in the future. Defendant points to the integrative language in the agreement, i.e., paragraph 3 of the "Background", which suggests that the agreement was intended to resolve "all issues pertaining to case number CV03-1876 upon the terms and conditions set forth in this Agreement." Additionally, Defendant emphasizes that the Agreement expressly contemplated a motion [*17] to extend. Taking these different parts of the agreement together, Defendant argues, attorneys' fees in conjunction with a motion to extend must have been covered. The Court is not persuaded by this reading. The fact that the parties specifically contemplated a motion to extend and yet did not expressly include language that stated an intent for the settlement amount to cover fees not yet incurred or fees in connection with the motion to extend - but instead only included the ambiguous term "further" - mitigates the force of Defendants' argument. Cf. *Wakefield, 852 F.2d at 484* ("[W]aiver of attorneys' fees should not be presumed from a silent record.").

Defendant's reliance on section V is likewise unavailing. Defendant argues that section V serves to emphasize the breadth of Plaintiffs' waiver. The Court finds Plaintiffs' reading of section V more plausible: while section IV talks about payment in connection with the case, section V specifically mentions injunctive claims in connection with the case. The Court is hesitant to read the terms "obligations and liabilities" to include attorneys' fees. While Defendants correctly note that the Wakefield release deemed sweeping enough to waive [*18] attorneys' fees did include the terms "obligations" and "liabilities," it also included the terms "costs or expenses of any nature whatsoever." See *Wakefield, 852 F.2d at 483*. Courts have tended to consider attorneys' fees to be *costs,* not *liabilities* in this context. See, e.g., *42 U.S.C. § 1988(b)* (attorneys fees will be included as costs); *Parker v. Metropolitan Water Reclamation Dist.*

*of Greater Chicago, 782 F. Supp. 387 (N.D. Ill. 1992)* ("liability, claims, and demands" is not broad enough to include attorneys' fees where release failed to mention the term or even costs).

While the Court finds Defendant's reading of the agreement to be reasonable, the Court cannot find that the language of the agreement betrays a clear waiver or a waiver so sweeping as to necessarily encompass attorneys' fees. See *Muckleshoot Tribe, 875 F.2d at 698.* Rather, the structure of section IV and the use of "further" instead of "future," "not yet incurred," or something that clearly indicated these fees were not yet "owed" suggest that the payment of attorneys' fees was only for the liabilities incurred up to that point. Accordingly, the Court finds that the language is ambiguous.

Ambiguous language is not [*19] necessarily the end of a waiver story in all cases, but it is here. As the Ninth Circuit explained in Muckleshoot Tribe, where "the language in the release is unclear or ambiguous, surrounding circumstances may clearly manifest the intent of the parties that attorneys' fees be waived." *875 F.2d at 698.* Although Defendant has made reasonable arguments as to its intent - i.e., that the payment of attorneys' fees was in part consideration for the option to extend - Defendant has presented no evidence of the surrounding circumstances that would indicate such an approach was in fact the intent or understanding of the parties. [5] Plaintiffs, who do not have the burden to show waiver, have highlighted why Defendant's proffered mutual intent would not make sense: it seems likely that Plaintiffs would waive any right to seek payment for future fees when (1) they do not know how the City would respond to the injunction once it is issued (and therefore how intense enforcement or a motion to extend would be), (2) they do know they would be entitled to attorneys' fees for monitoring and enforcing the injunction under Volpe, and (3) they are cognizant of the broad nature of the injunction (and, [*20] thus, the likelihood that it will need monitoring).

> 5   For example, City has presented no evidence (or argument devoid of evidence) that would suggest the amount of fees in the Settlement Agreement - nearly $ 95,000 - would have been an unreasonable estimate of fees and costs for *only* the work performed up to December 2003. If it had, such evidence might support City's argument that the amount paid included the possibility of additional legal work. In fact, Judge Manella's December 8, 2003 order granting the application for attorneys' fees shows that nearly $ 94,000 of this amount was for actual hours billed and costs incurred.

Because the language of the Settlement Agreement

does not clearly waive the right to seek attorneys' fees for the motion to extend or for the work leading up to the 2009 Settlement and Order, and because the City has presented no evidence that its reading of the ambiguous language reflects the intent of the parties, City has not met its burden to show that Plaintiffs have "clearly waived" attorneys' fees in this matter.

## B. Entitlement to Fees

Plaintiffs seeks attorneys' fees for two general endeavors: the time they spent on the motion to extend the injunction and [*21] the work done between the Court's order extending the injunction and the entry of the judicially enforceable settlement agreement. Although Defendant argues that Plaintiffs do not seek reasonable fees, Defendant does not appear to argue that, even if Plaintiffs have not waived a claim to fees, they are entitled to no fees.

### 1. Motion to Extend Injunction

Plaintiffs seek fees for time spent on the motion to extend the injunction, which the Court granted in April 2007. [6] Plaintiffs argue that the order extending the injunction, like the initial order granting a permanent injunction, altered the legal relationship between the parties. Additionally, Plaintiffs argue that they are entitled to fees for that time because it was time spent to monitor and enforce compliance with the decree. While Defendant argues that Plaintiffs' fee award should be reduced because of the hours claimed and the results reached, Defendant does not appear to argue that Plaintiffs may not recover at all for this work (except for the reasons discussed above). The Court finds that the successful motion to extend the injunction entitles Plaintiffs to fees for the hours reasonably spent enforcing the injunction. See *Volpe, 833 F.2d at 855-57.*

> 6   The [*22] standard for extending the injunction, "good cause," was "less than that needed for a permanent injunction." Order Granting Motion to Extend Injunction, at 7:23-27.

### 2. Time Between Extension of Injunction and Entry of Enforceable Settlement Agreement

Plaintiffs also seek reasonable attorneys' fees for the time spent between the entry of the Court's order extending the injunction and the Settlement & Order that was approved by the Court in February 2009. Again, while Defendant contests the amount of fees, Defendant does not contest entitlement to fees at all, except through its "waiver" argument. For the reasons stated in Plaintiffs' Motion, see Pl.'s Mem. at 3:21-8:24, and in light of no argument to the contrary (except for waiver), the Court also finds that Plaintiffs are entitled to reasonable fees for this work under federal and state law.

## C. Amount of Fees

The Court next addresses the amount of a reasonable fee. "In determining a reasonable attorney's fee, the district court's first step is to calculate a 'lodestar' by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).* [*23] In calculating the lodestar, "the district court should take in to account the factors set forth in *Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975),* . . . that it finds to be relevant." *McGrath, 67 F.3d at 252.* [7] Once the court has calculated the lodestar, the "second step . . . is to assess whether the presumptively reasonable lodestar figure should be adjusted on the basis of Kerr factors not already subsumed in the initial calculation." *Id.*

> 7   The Kerr factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *526 F.2d at 70.*

"The fee applicant bears the burden of documenting the [*24] appropriate hours expended in the litigation and must submit evidence in support of these hours worked." *Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).* Once the fee applicant has met that burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id. at 1397-98.*

### 1. Lodestar

#### a. Hours Reasonably Expended

The court must examine the amount of hours claimed by the moving party and "in order to award fees based on them, [must] find that the time actually spent was reasonably necessary." *Carson v. Billings Police Dep't, 470 F.3d 889, 893 (9th Cir. 2006).*

Plaintiffs seek compensation for a total of 862.50 hours expended on interviewing declarants, briefing for the first motion to extend the injunction and the reply,

preparing for and doing oral argument, briefing the second motion to extend the injunction and reply, briefing the opposition to Defendants' motion to vacate the injunction, negotiating the settlement agreement entered in February 2009, and communicating with co-counsel. Those 862.50 [*25] hours reflect work by attorneys Mark Rosenbaum, Carol Sobel, Anne Richardson, Peter Bibring, Peter Eliasberg, and Sanjukta Paul; legal assistant Joyce Bradberry; and Teresa Virgen-Torres and law students who helped gather declarations in connection with the motions to extend and the motion to vacate.

In determining the amount of hours for which compensation is sought, Plaintiffs exercised billing judgment. See *Hensley, 461 U.S. at 434*. The ACLU is not seeking compensation for more than 72 hours spent on the matter up to the Court's extension of the injunction or for an additional approximately 50 hours spent on the matter between the time of the Court's extension of the injunction and the entry of the settlement agreement. See Eliasberg Decl. PP 14-15. In addition to reducing the hours of certain individuals, the ACLU is not seeking compensation for anyone who billed less than 10 hours on the matter. Id. at P 15. Ms. Sobel reduced the time spent on briefing and research by a total of 44 hours. Hadsell Stormer is not seeking compensation for about 8% of the firm's total billing. Finally, Plaintiffs have taken the total amount after the exercise of billing judgment and reduced it by an additional [*26] 5% to ensure that no excessive or duplicative time is being sought. Plaintiffs have submitted evidence as to the calculation of billing rates and the hours actually expended. See Eliasberg Decl.; Richardson Decl.; Sobel Decl.; Litt Decl; Thorland Decl. This evidence is sufficient to meet their burden "of documenting the appropriate hours expended in the litigation and . . . submit[ting] evidence in support of these hours worked." *Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992)*.

Defendant argues that the hours billed are unreasonable and must be reduced in a number of ways. The Court finds that reductions for duplication and the interviews and declarations are appropriate.

i. Block Billing

First, Defendant argues that Plaintiffs block-billed their hours spent on litigation, and therefore that the Court should reduce the amount by 25%. Block billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007)*. It can be appropriate to take a reduction of 20% on hours due to block billing. [*27] *Welch, 480 F.3d at 948*. However, "the use of block billing does not justify an across-the-board

reduction or rejection of *all* hours," but only those that are block-billed. *Mendez v. County of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008)*.

Defendant identifies 162.4 hours ($ 89,922.00) that are alleged to be block-billed. Knapton Decl. P 24. Plaintiffs argue that many of the entries identified as block-billed actually list in significant detail the tasks performed during those hours. Plaintiffs emphasize that the important thing is that "sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006)*. The Court has reviewed the entries identified as block-billed by Defendant's consultant. See Knapton Decl., Ex. 3. After this careful review, the Court concludes that a reduction for block billing is not necessary. All of the entries are detailed enough for the Court to compare the hours expended against the tasks and assess the reasonableness of those tasks. Many of entries identified as block-billing are actually [*28] different parts of the same task, and many of the entries identified as block-billing identify a total of a few hours.

ii. Duplicative Internal Conferences and Multiple Attendance by Attorneys

Second, Defendant argues that Plaintiffs seek fees for 238.35 unnecessarily duplicative hours, totaling $ 106,240.50. Knapton Decl. P 26 & Ex. 4. "The court may reduce the number of hours awarded because the lawyer performed unnecessarily duplicative work." *Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)*. "[D]etermining whether work is inherently duplicative is no easy task," because some duplication is "inherent in the process of litigating over time." Id. Concerns about overstaffing are a relevant consideration, but determining whether there has been unnecessary duplication requires the exercise of "judgment and discretion, considering the circumstances of the individual case." *Democratic Party of Washington State v. Reed, 388 F.3d 1281, 1286-87 (9th Cir. 2004)*.

Defendant argues that the hours identified are duplicative because they begin when "it is clear that both sides wanted to agree on a plan" and use multiple, very experienced litigators to attend hearings and settlement [*29] conferences. Plaintiffs note that with respect to a number of identified entries, Defendant's expert does not separate duplicative time from non-duplicative time within an entry. The Court does not find the presence of lawyers at court meetings to be excessive or unnecessarily duplicative in this case: Plaintiffs typically only seek fees for two or three lawyers at those meetings, a number comparable to the lawyers present for the City at such meetings. Additionally, the Court finds that Plaintiffs did not bill excessively for drafting or reviewing documents.

The Court does note, however, that there are a significant number of very experienced civil rights litigators on this case, which did not have especially complex legal issues. The Court notes that such experience may have been necessary in light of the nature of this action, which involved the civil rights of thousands of Skid Row residents as affected by a significant City of Los Angeles initiative. However, the Court expresses some concern, looking at the hours billed, that the number of attorneys on this case perhaps produced an excessive amount of conferencing. To compensate, the Court will cut 50% of the time billed for conference [*30] calls and/or cross-firm team meetings. According to the Court's independent review of the records (including estimations where necessary due to how hours were recorded), this will reduce attorneys' hours in the following amounts: Rosenbaum by 2; Eliasburg by 3.8; Bibring by 9.3; Sobel by 7.1; Richardson by 7.3; Paul by 5.4.

### iii. Interviewing and Collecting Declarations

Defendant also argues that the time spent interviewing and collecting declaration is excessive. Defendant notes that Plaintiffs request a total of 170.75 hours (fees of $ 55,607.50) for interviewing and collecting approximately 40 declarations of Skid Row residents. See Knapton Decl. at P 30. Defendant compares the time spent by City on declarations (about .3 hours per declaration) to the time spent by Plaintiffs per declaration (about 4.37 hours).

The Court agrees that the time spent for collecting declarations was excessive in this case. While the Court does not expect Plaintiffs to spend an equal amount of time to the City on each declaration, the Court finds that an average of around four hours per declaration is excessive under the circumstances, even considering the

time it might take to review those documents and [*31] the burden plaintiffs may have had on the motion to extend the injunction. [8] Accordingly, the Court will reduce the time billed for interviewing and taking declarations by two-thirds. On the Court's review of the billing records, [9] this will reduce the respective hours by the following amounts: Rosenbaum by 4.7, Bibring by 17.5, Richardson by 1.6, Paul by 7, paralegals by 13.7, and law students by 27.7 hours.

> 8   For example, it seems less than efficient for an attorney billing at a rate of $ 740 per hour to spend seven hours - or almost twenty percent of the attorney's time billed for this case - on this type of fact-gathering. The Court recognizes the importance of understanding the facts of one's case, but notes that, in conjunction with the significant additional fact-gathering, this amount is excessive.
>
> 9   Plaintiffs note that much of the time interveiwing and drafting declarations has been wrongly classified by Defendants' expert. In calculating the reduction in time, the Court used only that billed time that was spent interviewing or preparing declarations.

### iii. Reasonable Hours

The Court has also reviewed the remainder of the hours billed, as well as the Knapton Declaration, for reasonableness, [*32] and has found that the remaining hours, with the 5% across-the-board reduction to account for potential excessive time or duplication not already considered, are properly charged. [10] Thus, in light of the adjustments above, the Court finds that the following hours (plus the 5% across-the-board reduction to account for potential excessive time) are reasonable:

| Name | Requested Hours | With Court's Reductions | With 5% Across-the-Board Reduction |
|---|---|---|---|
| Sobel | 175.7 | 168.6 | 160.17 |
| Rosenbaum | 40.1 | 33.4 | 31.73 |
| Eliasberg | 88.6 | 84.8 | 80.56 |
| Bibring | 345.1 | 318.3 | 302.385 |
| Rastegar | 18.8 | 18.8 | 17.86 |
| Law students | 41.5 | 13.8 | 13.11 |
| Paralegals | 37.7 | 24.0 | 22.8 |
| Richardson | 69.4 | 60.5 | 57.475 |
| Paul | 77.8 | 65.4 | 62.13 |

10   The Court has included the fees requested for the Reply into the requested hours, above.

### b. Reasonable Hourly Rate

Next, the Court addresses a reasonable hourly rate

2009 U.S. Dist. LEXIS 34803, *

for each of the individuals for which Plaintiffs seek compensation. For the purposes of attorneys' fee motions, courts look to the "prevailing market rate[] in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson, 465 U.S. 886, 895-96, 104 S. Ct. 1541, 79 L. Ed. 2d 891 & n.11.* "[T]he relevant community is the forum in which the district court sits." *Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).* [*33] The established standard for determining the reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id. at 502* (internal quotation marks omitted). In determining an appropriate rate, a district court may make reference to the factors in Kerr, which "include the novelty and difficulty of the issues involved in a case, the skill required to litigate those issues, the preclusion of

other employment, the customary fee, relevant time constraints, the amount at stake and the results obtained, the experience, reputation, and ability of the attorneys, the nature and length of their professional relationship with the client, the 'undesirability' of a case, and awards in similar suits." *Davis v. City and County of S.F., 976 F.2d 1536, 1546 (9th Cir. 1992),* vacated in part on other grounds by *984 F.2d 345 (9th Cir. 1993).* [11]

> 11 Determining a prevailing market rate can be especially difficult in situations where an attorney takes cases on a contingency or nonprofit basis.

Plaintiffs seek to the following hourly rates for the lawyers in this case:

| Name | J.D. | Requested Rate |
| --- | --- | --- |
| Sobel | 1978 | $ 710 |
| Rosenbaum | 1974 | $ 740 |
| Eliasberg | 1994 | $ 525 |
| Bibring | 2002 | $ 375 |
| Rastegar | 2007 | $ 240 |
| Richardson | 1989 | $ 575 |
| Paul | 2003 | $ 350 |

Additionally, [*34] Plaintiffs seek fees for the work of law students in the amount of $ 200 per hour, and for paralegals at the rate of $ 175 per hour.

Plaintiffs have presented evidence in support of each of these rates. See Eliasberg Decl. (discussing experience of ACLU personnel); Sobel Decl. (discussing rates awarded in other cases); Litt Decl. (discussing rates granted in other cases and civil rights litigation in Southern California); Richardson Decl. (discussing rates for Hadsell Stormer personnel); Thorland Decl. (discussing rates for attorneys at Loeb & Loeb in Los Angeles). [12] In response, Defendants' expert has discussed the Laffey Matrix, a publication based on District of Columbia averages that can be adjusted for different regions. Defendants have not otherwise presented argument or evidence as to reasonable market rates in the field. In particular, with the exception of offering the Laffey Matrix as an alternative, Defendants have not explained why Plaintiffs rates are not within the reasonable range of rates. While Knapton suggests that rates for commercial law firms are not completely helpful, he does not undercut the testimony from Richardson as to the rates charged by Hadsell Stormer [*35] lawyers or the declarations from others who have

testified to the rates at which they were awarded fees in previous years. The Court is not persuaded that the Laffey Matrix, even adjusted for Los Angeles, is more helpful than the rates actually used by other courts or the rates of law firms. The Court recognizes that many of the attorneys in this case are experienced, renowned civil rights litigators. Defendants have not explained why the rates suggested by Plaintiffs are not reasonable.

> 12 The Court is satisfied with the rate sought for Ms. Virgen Torres, which is equivalent to that of a paralegal. See Reply at 5; Lhamon Decl.; Torres Decl.

After a review of the evidence presented by the parties in support of fees, the Court finds that these requested rates are reasonable for each of the attorneys and paralegals.

c. Lodestar

Based on the hours and rates presented above, the lodestar amount is as follows.

2009 U.S. Dist. LEXIS 34803, *

| Name | Firm | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Sobel | Law Office of Carol Sobel | 160.17 | $ 710 | $ 113,720.70 |
| Rosenbaum | ACLU | 31.73 | $ 740 | $ 23,480.20 |
| Eliasberg | ACLU | 80.56 | $ 525 | $ 42,294.00 |
| Bibring | ACLU | 302.385 | $ 375 | $ 113,394.37 |
| Rastegar | ACLU | 17.86 | $ 240 | $ 4,286.40 |
| Law students | ACLU | 13.11 | $ 200 | $ 2,622.00 |
| Paralegals | ACLU | 22.8 | $ 175 | $ 3,990.00 |
| Richardson | HS/HSKRR | 57.475 | $ 575 | $ 33,048.12 |
| Paul | HS/HSKRR | 62.13 | $ 350 | $ 21,745.50 |
| | | | Total | $ 358,581.29 |

2.  [*36] Adjustment of Lodestar

While the lodestar figure presumptively represents a reasonable amount of attorneys' fees, "other considerations . . . may lead the district court to adjust the fee upward or downward." *Hensley, 461 U.S. at 433*; see *McGrath, 67 F.3d at 252.* The Supreme Court has highlighted the "results obtained" as a particularly important factor in determining whether the fees should be adjusted. *Hensley, 461 U.S. at 433.* Hensley noted that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," while the lodestar figure may be excessive for a plaintiff who "has achieved only partial or limited success." *Id. at 435-36.* [13]

13   Plaintiffs argue that an analysis of their results is irrelevant because they are entitled to fees for hours "reasonably spent" for monitoring and enforcing the a consent decree, "even as to matters in which [they] did not prevail" under N.A.A.C.P. v. San Francisco Unified School District. The Court does not read this quote as holding inapplicable the normal, two-step fee-assessment approach. Rather, the *Volpe* and *N.A.A.C.P* courts addressed whether the normal *§ 1988* fee calculations apply at all to time spent [*37] monitoring a consent decree. See *Volpe, 833 F.2d at 855-57, 859.*

City argues that the lodestar figure should be reduced because the results obtained were not "excellent." In particular, City notes that the extension of the injunction did not require especially difficult legal issues or complicated facts, and that the injunctions essentially adopted the legal standard. Moreover, City notes that Plaintiffs did not meet the normal permanent injunction standard, but rather were only required to institute "good cause," which the Court interpreted as

akin to a summary judgment standard. Plaintiffs emphasize that they succeeded in securing exactly what they sought: an extension of the injunction in April 2007 and a new injunction and order.

The Court imposes a downward adjustment of 10% here. The Court finds that the ten percent downward adjustment properly reflects the significant success on important issues that Plaintiffs had in this litigation and respects the presumptive reasonableness of the lodestar calculation, while also recognizing that Plaintiffs did not prevail on every point, either in the motion to extend or the final settlement. While important, the legal and factual issues presented [*38] in the motions to extend the injunction were akin to prior arguments before the Court. Additionally, the Court did not extend the injunction on the theories set forth by the Plaintiffs, and did so for a limited time. The February 2009 Settlement and Order represents at least some compromise in Plaintiffs' position (of course, it also represents some compromise in City's position). At the same time, although Plaintiffs did not need to meet the normal permanent injunction standard, they largely succeeded in what they sought, i.e., an extension of the injunction, over opposition by Defendant. Additionally, the February 2009 Settlement and Order included a number of different terms than the 2003 injunction, and specified that certain practices defendants had defended as lawful activity are enjoined. E.g., Settlement & Order (February 17, 2009), at PP 6-8; Def.'s Opp. to Second Mot. to Extend Injunction at 14-15. Accordingly, the Court finds that the reasonable attorneys' fees in this case are $ 322,723.16.

**D. Costs**

Pursuant to Plaintiffs' request, the Court grants costs in the amount of $ 1,546.14. See Eliasberg Decl. at P 17 & Ex. 2.

2009 U.S. Dist. LEXIS 34803, *

**IV. CONCLUSION**

For the foregoing reasons, the Court grants [*39] Plaintiffs' Motion for Attorneys' Fees and awards Plaintiffs $ 322,723.16 in attorneys' fees and $ 1,546.14 in costs.

IT IS SO ORDERED.

Dated: April 7, 2009

/s/ Dean D. Pregerson

DEAN D. PREGERSON

United States District Judge

*102XSB*

********** *Print Completed* **********

*Time of Request: Thursday, May 27, 2010  16:50:40 EST*

*Print Number:    2841:223604099*
*Number of Lines: 629*
*Number of Pages:*

*Send To:   SOBEL, CAROL*
*           LOYOLA LAW SCHOOL - LOS ANGELES*
*           919 SOUTH ALBANY ST*
*           LOS ANGELES, CA 90015-1210*