# EXHIBIT F

ENTERED CLERK, U.S DISTRICT COURT
AUG 27 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

FILED CLERK, U.S DISTRICT COURT
AUG 27 2007
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

✓ Priority
✓ Send
✓ Clsd
✓ Enter
___ JS-5/JS-6
___ JS-2/JS-3
___ Scan Only

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERMAN ATKINS,<br><br>    Plaintiff,<br><br>v.<br><br>DANNY C. MILLER,<br><br>    Defendants. | Case No. CV 01-01574 DDP (Ex)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Motion filed on July 9, 2007] |

This matter comes before the Court on Plaintiff Herman Atkins's ("Atkins" or "Plaintiff") motion for attorneys' fees and costs. After reviewing the papers submitted by the parties, the Court grants the motion and adopts the following order.

I. **BACKGROUND**

In 1988, Herman Atkins was convicted of a 1986 rape that he did not commit. After his wrongful conviction, he worked to establish his innocence. The Innocence Project accepted his case in 1993 and sought biological evidence to submit to DNA testing, but were opposed in their efforts by the Riverside County District

Attorney. The Innocence Project was eventually able to conduct DNA testing that proved Herman Atkins's actual innocence, and on February 12, 2000, Atkins was released from prison.

In 2001, Atkins filed this 42 U.S.C. § 1983 wrongful conviction action, alleging that various Riverside County officials, including then-Detective Danny C. Miller ("Miller" or "Defendant"), engaged in unconstitutional misconduct that caused Atkins's wrongful conviction and imprisonment. All defendants moved to dismiss, and the claims were narrowed in opinions issued by the Hon. Margaret Morrow. The matter was transferred to the Hon. Percy Anderson on June 12, 2002, upon his appointment to the federal bench. After discovery, the remaining defendants moved for summary judgment, which Judge Anderson granted in full on May 7, 2003, dismissing the entire case.

Atkins appealed. On September 14, 2005, the Ninth Circuit reversed in relevant part and remanded for trial against Miller on two theories of liability arising under the Fourteenth Amendment: (1) that he deliberately fabricated evidence – a statement he attributed to Eric Ingram – and; (2) that he withheld the material fact of his misconduct from the prosecution, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny.

After remand, discovery was reopened. Trial was initially set to begin on May 30, 2006, but was rescheduled twice. Pretrial litigation continued from the initial trial date through to the eventual trial, including eight defense and five plaintiff motions *in limine* and three pre-trial conferences.

During the proceedings post-remand, Judge Anderson issued two orders: the first excluding as irrelevant any evidence of Atkins's

1 actual innocence, and the second requiring Atkins to disclose to
2 Miller, before trial, work product concerning areas that would be
3 raised during his adverse examination of Miller.  In opposition to
4 these two rulings, Atkins filed an emergency motion for a writ of
5 mandamus to the Ninth Circuit, which the Ninth Circuit ultimately
6 granted on both grounds.

7    On August 25, 2006 - the Friday before trial was to begin -
8 Judge Anderson faxed a minute order inviting Miller to move for
9 summary judgment as to causation on Atkins's fabrication-of-
10 evidence theory.  Atkins immediately filed a second emergency
11 motion for a writ of mandamus on the ground that this very matter
12 had been determined by the Ninth Circuit in reversing Judge
13 Anderson's grant of summary judgment and finding a triable issue on
14 the fabrication claim.  The Ninth Circuit ordered Judge Anderson to
15 file a response, but Judge Anderson instead withdrew the August 25
16 minute order and the mandamus petition was denied as moot.

17    Atkins filed a motion to recuse Judge Anderson on Monday,
18 August 28, 2006, the day before jury selection was to begin.  The
19 motion was referred to the Hon. Florence-Marie Cooper, who found
20 the question "close" but denied the recusal request.  Atkins then
21 filed a third emergency motion to the Ninth Circuit seeking a writ
22 of mandamus the same day.  The Ninth Circuit agreed that the
23 question was close, but denied the motion without prejudice.

24    The case went to trial in front of Judge Anderson.  After a
25 two-week trial, the case was submitted to the jury.  Shortly into
26 the deliberations, the jurors sent back a note stating that they
27 did not think they would be able to reach a unanimous verdict.
28 They later sent another note inquiring whether unanimity was

3

required for all substantive questions on the verdict form.[1] When they returned the following morning, the jurors indicated that they would like to continue the deliberations. At the end of that day, Judge Anderson polled the individual jurors as to their thoughts on the probability of reaching an unanimous verdict; six indicated that they thought it was probable, two thought it was not. The next morning, Judge Anderson stated his intent to declare a mistrial, over the objections of both parties.

Atkins filed a fourth emergency motion for a writ of mandamus, seeking to enjoin Judge Anderson from releasing the jury. After another deadlock note was received, the Ninth Circuit ordered Judge Anderson to respond to the petition, but ultimately granted him leave to do as he saw fit. Judge Anderson granted a mistrial and discharge the jury on September 13, 2006. Accordingly, the mandamus petition was denied as moot. However, the Ninth Circuit issued an opinion ultimately recusing Judge Anderson.

The case was reassigned to the Hon. Christina A. Snyder on September 19, 2006. On October 17, 2006, the Ninth Circuit sua sponte issued an amended order, reiterating its findings of bias but adding that it would have been preferable, before ruling on the recusal motion and ordering the case be transferred to a different judge for a new trial, to allow Atkins to first present his renewed motion to the district judge who considered the initial motion.

---

[1] The verdict form indicated that if the answer to Question 1 (whether Miller fabricated evidence) was "No," the jury need not answer any other question, but instead should sign and return the form. Thus, this question indicates that the jury had tentatively found for Atkins on the question of fabrication.

4

Thus, the Ninth Circuit permitted Atkins to make such a motion if he wished to do so.

Accordingly, the case was reassigned back to Judge Anderson on October 27, 2006 and Atkins made a renewed recusal motion to Judge Cooper on October 30, 2006. Judge Cooper granted the renewed motion on November 13, 2006, and this case was transferred to this Court on November 14, 2006.

Miller then filed a Rule 50 motion for judgment on the fabrication claim and Atkins filed for reconsideration of several motions in limine decided by Judge Anderson. After further pre-trial litigation and more lengthy negotiations as to the proposed jury instructions, a three-week trial was conducted in April 2007. At the conclusion, the jury found for Miller on the fabrication of evidence claim, but found for Atkins on the <u>Brady</u> claim, finding that Miller had fabricated the Ingram statement and that Miller's suppression of that fabrication and other evidence favorable to Atkins had caused Atkins's wrongful conviction. The jury awarded Atkins $2 million in damages. Miller then filed a post-trial Rule 50 motion, which this Court denied on June 26, 2007.

Atkins now moves the Court for attorneys' fees and costs under 42 U.S.C. § 1988.

## II. DISCUSSION[2]

### A. <u>Attorneys' Fees</u>

---

[2] Defense counsel argues that Plaintiff's counsel failed to comply with the meet and confer requirements of L.R. 7-3. Although the Court could deny the motion for failure to comply with this rule, it is not clear to the Court that Plaintiff's counsel failed to comply. Accordingly, in the interest of deciding this case on the merits, the Court will consider the motion.

Under 42 U.S.C. § 1988, the district court may, in its discretion, award attorneys' fees to a prevailing party in an action brought under § 1983. To determine the appropriate attorneys' fee award under § 1988, courts use the "lodestar" method, which "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (quotation and citation omitted). After making that computation, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors. Cunningham v. County of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1988). The twelve factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 252 n. 4 (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)). However, many of these factors are subsumed within the initial lodestar determination, and therefore

6

it is only the rare case in which this lodestar determination should be adjusted. <u>Cunningham v. County of Los Angeles</u>, 879 F.2d 481, 487 (9th Cir. 1988).

Defendant concedes that Plaintiff is the prevailing party under § 1988 and that fees should be awarded. However, Defendant contends that the amount Plaintiff is requesting is excessive.

    1.  <u>Rates</u>

Plaintiff's counsel is seeking reimbursement for a total of 3,174 substantive hours.[3] Plaintiff requests the following rates for the work of his legal staff:

| | |
|---|---|
| Peter Neufeld: | $675 |
| Debi Cornwall: | $400 |
| Jennifer Laurin: | $315 |
| Anna Hoffman: | $300 |

Defendant argues that Plaintiff's requested rates are excessive. Defendant suggests the following rates:

| | |
|---|---|
| Peter Neufeld: | $350 to $400 |
| Debi Cornwall: | $200 to $250 |
| Jennifer Laurin: | $150 to $200 |
| Anna Hoffman: | $150 to $200 |

A reasonable hourly rate is one "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1145 (9th Cir. 2001). The plaintiff bears the burden of producing evidence that the requested rates are in line

---

[3] <u>See</u> Pl.'s Ex. 1, attached to Reply. Several other attorneys also worked on the case over the six years it was litigated. Plaintiff is not seeking compensation for their efforts.

7

with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. <u>Id.</u> The burden is on the defendant to produce rebuttal evidence in support of a lower hourly rate. <u>Id.</u>

All four Plaintiff's counsel are lawyers at Cochran, Neufeld and Scheck, LLP ("CNS"), a small civil rights firm formed nine years ago by Johnnie Cochran, Peter Neufeld and Barry Scheck. CNS is a seven-attorney firm with a nationwide practice devoted entirely to police misconduct § 1983 cases, and predominantly wrongful conviction suits. Plaintiff represents that CNS is the only firm in the country litigating these cases full-time.

Peter Neufeld, a founding partner of CNS, graduated from New York University Law School in 1975. He has over 30 years of experience as a trial attorney. He is a cofounder and co-director of the Innocence Project at the Benjamin N. Cardozo Law School, and has written or co-authored several articles and a book on wrongful convictions. For his work in criminal justice, civil rights and trial practice, he has been repeatedly honored by countless reputable schools and organizations. He represents that he has probably litigated more wrongful conviction cases than any lawyer in the country outside of CNS.

Debi Cornwall graduated from Harvard Law School in 2000. She clerked for the Hon. Robert Sweet of the Southern District of New York before joining CNS, where she has worked as an associate for nearly six years. At CNS, she has successfully litigated and co-chaired wrongful conviction suits in cases across the country. In 2006, she became a partner at CNS.

         Anna Hoffman graduated third in her class from New York University School of Law in 2004. She clerked for the Hon. Reginald C. Lindsay of the District of Massachusetts before joining CNS as an associate in 2006.

         Jennifer Laurin graduated first in her class from Columbia Law School in 2003. She clerked for the Hon. Thomas P. Griesa of the Southern District of New York and the Hon. Guido Calabresi of the Second Circuit before joining CNS.

         Plaintiff's requested rates fall at the high end of the spectrum.[4] However, as noted above, this case had a long and difficult history. It involved complex and novel issues of criminal procedure, constitutional law, tort law and governmental immunities. Plaintiff's briefs and oral arguments were excellently presented and, during the trial, the Court found Plaintiff's attorneys exceedingly well-prepared and skilled at trial litigation. In short, the Court believes that Plaintiff's attorneys did an excellent job trying this complicated, difficult case. Their experience, reputation and skill are all considerable, and Defendant has not submitted any relevant evidence or cited to authority that would indicate Plaintiff's counsel's proposed rates are above market.[5] Accordingly, the Court does not find that Plaintiff's requested rates are so exceptionally high as to justify deviating from the lodestar figure. The Court is therefore

---

[4] In support of its motion, Plaintiff submitted the declarations of Carol Sobel and Barrett Litt, two experienced civil rights lawyers who primarily practice in Los Angeles, as well as recent National Law Journal articles on billing rates. (Pl.'s Exs. 2-5.)

[5] Most of Defendant's cases are from out of district.

9

inclined to apply those rates in calculating Plaintiff's attorneys' fees.

Defendants also argue that Plaintiff's requested rate of $100/hour for the work performed by Plaintiff's paralegal, Tanya Koshy, is too high. However, in Los Angeles,[6] such a rate is typical, if not modest. (See, e.g., Pl.'s Ex. 2, Declaration of Barrett S. Litt ¶ 25.) Accordingly, the Court is not inclined to deviate from Plaintiff's requested paralegal fee.

### 2. Hours: unsuccessful claims and degree of success obtained

Where the prevailing party has not won every claim initially brought, the reviewing court must determine the appropriate level of compensation to plaintiff's counsel for time spent on claims she did not win. Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003); Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001). In making this determination, the first step is to consider whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995). Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.

---

[6] Defendant argues that "Inland Empire" rates should apply because the case could have been filed in Riverside. That, however, is not the standard. It was filed in Los Angeles, and therefore the higher Los Angeles rates apply.

10

The second step is to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." <u>Hensley</u>, 461 U.S. at 434. In answering that question, a district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Id.</u> at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." <u>Id.</u> A plaintiff may obtain excellent results without receiving all the relief requested. <u>Id.</u> at 435 n. 11.

Here, there were no unrelated claims. The fabrication of evidence claim and the <u>Brady</u> claim that were litigated in the second civil trial were clearly intertwined.[7] Moreover, the claims Plaintiff initially brought against all four defendants arose out of the same core set of facts and legal theories, such as those related to identification procedures, that prevailed at trial. Finally, the forensic <u>Brady</u> and fabrication claims were important to the materiality and causation elements of the <u>Brady</u> claim against Miller that ultimately prevailed. Thus, the Court is inclined to find that Plaintiff's claims were all related. <u>See</u> <u>Webb v. Sloan</u>, 330 F.3d 1158, 1169 (where all claims arise out a common core of facts and a common course of conduct, it is reversible error for a district court to exclude such claims as "entirely distinct and separate" from the successful claims).

---

[7] Indeed, to find for Plaintiff on the <u>Brady</u> cause of action, the jury necessarily found (as indicated on the Special Verdict Form) that Defendant had fabricated the Ingram statement.

11

Next, the Court must determine "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Defendant argues that plaintiffs who have won similar wrongful conviction civil rights lawsuits typically have received awards much larger than Atkins's. Thus, Defendant contends, Plaintiff's $2 million verdict is not "excellent." This contention, however, fails to take into account the unique circumstances giving rise to this case. This case was complicated factually, procedurally and substantively. Plaintiff's counsel, who litigates wrongful conviction suits almost exclusively, has stated that this case stood out as presenting unique hurdles to success. (Declaration of Deborah L. Cornwall ¶ 20.) Given the complexity of this action, a two million award is an excellent result.[8] Moreover, as Plaintiff explains, the number of hours spent in litigating this case was exceptionally low, given its long history and its difficulty. In short, there is no support for reducing Plaintiff's fees based on the size of the verdict.

### 3. Travel time

Defendant argues that Plaintiff is not entitled to compensation for substantive work completed during travel. In the Ninth Circuit, courts determine whether the travel time was reasonably incurred. See Davis v. City of San Francisco, 976 F.2d 1536, 1543 (9th Cir. 1992), diff't potion vacated by 984 F.2d 345

---

[8] Significantly, even if Plaintiff had prevailed under his fabrication of evidence theory, the jury could not have awarded him any further damages; Plaintiff prevailed against Defendant for the full extent of his loss.

12

(9th Cir. 1993). Here, Plaintiff billed travel time at 50% of the proposed substantive rates. Plaintiff has provided evidence that its firm has a unique expertise in this area of law, as the only firm nationally handling wrongful conviction cases full time. Moreover, Plaintiff's lead counsel, Peter Neufeld, had a longstanding relationship with Plaintiff from his years of pro bono representation resulting in Plaintiff's exoneration and release. Given these circumstances, the Court finds that Plaintiff's counsel's travel work was necessary and reasonable.

### 4. Administrative work

In the Ninth Circuit, "even purely clerical or secretarial work is compensable if it is customary to bill such work separately." Trustees of Const. Industry & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1257 (9th Cir. 2006) (citation omitted). In Los Angeles, it is customary to bill administrative tasks separately. Here, Plaintiff's counsel has separated out the administrative tasks and billed them at 50% of the proposed substantive rates. Thus, the Court is inclined to grant this portion of the fee request.

### 5. Fees on fees

The Ninth Circuit has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable. See, e.g., D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1387-88 (9th Cir. 1990). Plaintiff has requested "fees on fees" in the total amount of $6,500 for the work done in preparing this motion. Plaintiff has calculated this rate as follows: For the

13

work of Debi Cornwall, 10 hours x $200/hr (proposed 50% discounted rate); for the work of Anna Hoffman, 30 hours X $150/hr (proposed 50% discounted rate). Defendant argues that because Plaintiff's substantive fee request is unreasonable, Plaintiff's fees on fees request should be reduced. Because the Court finds Plaintiff's substantive request reasonable, however, it is also inclined to grant Plaintiff's fees on fees request.

B.  Expenses and Costs[9]

Federal Rule of Civil Procedure 54(d)(1) provides generally that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). "Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). Such out-of-pocket expenses are recoverable when reasonable. Id.

1.  Jury Consultant Fees

Courts in the Ninth Circuit will award prevailing parties the expenses and fees of jury consultants who ran focus groups and assisted in jury selection at trial. See, e.g., Confederated

---

[9] Plaintiff's counsel is not seeking reimbursement for approximately $22,000 of costs incurred before 2003, when Plaintiff's counsel shifted to a new book-keeping system. This includes the costs of the 11 depositions taken before summary judgment, and travel expenses associated with taking those depositions.
Plaintiff's counsel also withdrew its request for $1,000 in mediation costs, and its request for compensation for $1,228.58 incurred to bring Plaintiff to New York for his second deposition.

14

Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co., No. CV 00-1693-A, 2003 WL 23715982, at *8-9 (D. Or. Oct. 27, 2003) (allowing $60,000 in costs for trial consulting service to conduct a mock trial), aff'd 411 F.3d 1030 (9th Cir. 2005), vacated and remanded on other grounds sub nom Weyerhauser Co. v. Ross-Simmons Hardwood Lumber Co., Inc., 127 S.Ct. 1069 (2007). Plaintiff's counsel used Josh Dubin Consulting Services for their jury consultant needs and negotiated a discounted rate. Given the complexity of the issues in this case and the discounted rate, the Court is inclined to find Plaintiff's total jury consultant expenses of $20,935.32 reasonable.

### 2. Travel expenses

Travel costs are compensable so long as they are reasonable. See Lasha v. Tharp, 907 F.2d 154 (mem. op.) at *2 (9th Cir. 1990). Here, Plaintiff's counsel attempted to minimize the number of flights to Los Angeles, appearing telephonically when possible. At times, however, Plaintiff's counsel and witnesses were required to travel to Los Angeles on a week's notice or less, which increased the costs of travel. During both three-week trials, lead counsel Peter Neufeld stayed with a friend rather than in a hotel. The total cost of travel, lodging and meals over five years of litigation is $40,363.35. The Court is inclined to find this amount reasonable.

### 3. Shipping expenses

Defendant argues that Plaintiff's shipping expenses should not be reimbursed. However, most of Plaintiff's shipping expenses are

15

for filings to this Court, which does not have civil e-filing. Thus, even local counsel must use a shipping carrier, send a runner, or bill paralegal time and travel costs to file documents. Plaintiff's other major shipping expense was sending boxes of documents to Los Angeles for the two trials. The Court is inclined to find these shipping expenses reasonable and compensable.

### 4. Investigator expenses

Defendant appears to argue that Plaintiff's investigation expenses of $54,995.48 were unreasonable. However, Plaintiff incurred many of these expenses in his efforts to locate Riverside Deputy Chris Taylor, a witness whose identity and location Defendant did not reveal to Plaintiff before trial. Plaintiff also used an investigator to locate and initiate contact with Eric Ingram, whose testimony was critical to Plaintiff's claims, as well as the three eyewitnesses, so that their testimony could be taken by deposition. Given the length of time that had passed between Plaintiff's wrongful conviction and his release, this work required an extremely skilled investigator. Accordingly, the Court is inclined to find Plaintiff's request for investigation expenses reasonable.

## III. CONCLUSION

For the foregoing reasons, the Court finds that no reduction to the lodestar is warranted. Accordingly, the Court is inclined to grant the motion and award Atkins § 1988 attorneys' fees in the amount of $1,368,834, fees on fees in the amount of $6,500, and

costs in the amount of $165,067.22.[10] The Court is also inclined to award post-judgment interest under 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

Dated: 8-27-07

DEAN D. PREGERSON
United States District Judge

---

[10] This figure does not include the $4,763.50 requested separately in a Bill of Costs under § 1920.